## REGENTS OF UNIVERSITY SYSTEM OF GEORGIA v. PAGE, Collector of Internal Revenue.

### No. 770.

District Court, N. D. Georgia.
Jan. 6, 1937.

Marion Smith and M. E. Kilpatrick, both of Atlanta, Ga., for complainant.

M. H. Eustace, Sp. Asst. to Atty. Gen., and M. Neil Andrews, Asst. U. S. Atty., of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

The above case came on for hearing upon its merits, and evidence having been introduced, arguments of counsel had, and briefs filed, the court now finds:

### Finding of Facts.

1. Complainant is a public corporation and an instrumentality of the State of Georgia, incorporated by an act of the Legislature of Georgia in the year 1931 (Laws 1931, p. 20). The University of Georgia and the School of Technology are branches of complainant, so made by said act, each of which colleges is, and at all times herein mentioned has been, operated under the supervision and control of complainant.

2. Defendant W. E. Page was appointed United States Collector of Internal Revenue for the Collection District of Georgia on June 20, 1933, and ever since that date has been and now is the duly appointed, qualified, and acting Collector of Internal Revenue for said district.

3. During the times alleged in the bill of complaint there was maintained at the University of Georgia, and at said School of Technology, athletic associations, incorporated by law, which were known as University of Georgia Athletic Association and Georgia Tech Athletic Association, respectively, except that the Georgia Tech Athletic Association operated as an unincorporated association prior to March 8, 1934, the date of its incorporation. Both associations have always functioned through a governing body composed of an equal number of faculty members and alumni of the respective colleges. These associations have control of physical education and athletic games at said colleges, including intercollegiate contests in football, to which spectators are admitted upon the payment of admission charges of varying amounts.

4. All health and athletic programs of the said two colleges were, during the year 1934, adopted and supervised by the faculties of said colleges, and approved by each of their presidents, and were, in turn, approved by complainant.

5. The health and athletic programs of the colleges included both intermural and intercollegiate athletics; and approximately 80 per cent. of the male students in each college engaged in some manner in the program of physical education during the year 1934. Approximately 30 per cent. of them engaged in intercollegiate athletics.

6. At both colleges participation in the physical education is required of all students that cannot qualify for R. O. T. C. training.

7. The physical education program also includes the women students, there being thirty courses in physical education for women.

8. The expenses of physical education and athletic programs at each college are supported in large measure from admission charges to athletic contests. In addition, a small student's fee is collected from each student, which is used for such purpose. The entire expenses of physical education and athletic programs in the two colleges are met by said admission charges and students' fees.

9. During and since the year 1934, each ticket of admission to such athletic events at the University of Georgia contained the following notice: "The University of Georgia, being an instrumentality of the government of the State of Georgia, contends that it is not liable for any admission tax. The amount stated as a tax is so stated because the University is required to do so by Treasury regulations pending a decision as to its liability in this respect. This amount is collected by the University as a part of the admission and will be retained as such unless it is finally determined that the University is itself liable for the tax." The same notice appeared on all of the tickets of admission to athletic contests at the School of Technology, except the name "School of Technology" is inserted in lieu of the name "University of Georgia."

10. Neither complainant nor either of said athletic associations, or any other of complainant's branches or instrumentalities, made any returns to defendant of the amounts stated on the admission tickets as a tax, but both associations kept all amounts so collected separate and apart from all other funds and deposited them to their respective accounts; the amount so collected by the University of Georgia Athletic Association, to wit, $895.37, being deposited in the Citizens & Southern National Bank in Athens, Ga.; and the amount collected by Georgia Tech Athletic Association, $3,914.63, being placed in the First National Bank, in Atlanta, Ga.

11. No part of either of these sums has been paid to defendant or to the United States.

12. Upon failure of complainant and its branches and instrumentalities to make returns and pay taxes on said admissions, defendant made returns of same, claimed as due and owing for the months of September and October, 1934, amounting to $895.37 from the University of Georgia Athletic Association, and amounting to $3,914.63 from Georgia Tech Athletic Association. Assessments of said amounts were thereafter made by defendant.

13. Upon failure of complainant and its branches and instrumentalities, including the two athletic associations, to pay, upon demand of defendant, the said amounts claimed as taxes, defendant issued warrants for distraint. One of these, relating to the University of Georgia Athletic Association, was served, on October 24, 1934, upon Charles E. Martin as an officer of said association, as were also two notices and demands for payment by him or the University of Georgia Athletic Association of the sum of $895.37 for admission taxes for the months of September

and October, 1934. On the same date defendant also levied upon the money and bank deposit of said association in the Citizens & Southern National Bank. The bank failed and refused to deliver said $895.37 to defendant, although it held this amount of funds belonging to said association. The other warrant, relating to the Georgia Tech Athletic Association, was served October 25, 1934, upon Dr. A. H. Armstrong as an officer of said association, as were also two notices and demands for the payment by him or said association of the sum of $3,914.63 for admission taxes alleged to be due on account of admissions collected during the months of September and October, 1934. On the same day defendant levied upon the money and bank deposit of said association in the First National Bank of Atlanta and demanded payment and delivery of said $3,914.63. The bank failed and refused to deliver same to defendant, although it had the amount on deposit to the credit of the association.

14. The 10 per cent. of the admissions collected by the two athletic associations was placed in the bank accounts maintained by said associations, respectively, but nominally in the name of Charles E. Martin, Trustee, University of Georgia Athletic Association, University of Georgia Department of Athletics, and Athletic Association of University of Georgia; and Georgia Tech Athletic Association.

15. During the year 1932 the Georgia Tech Athletic Association filed an admission tax return, verified by Floyd Field, Treasurer, and paid a tax representing 10 percent. of admissions collected during a portion of the year 1932. Thereafter the association filed claim for refund on behalf of complainant with the Treasury Department of the United States. This claim for refund was denied.

### Conclusions of Law.

At the first trial this court held, in sustaining the motion to dismiss, that the allegations of the petition did not set forth a cause of action and did not show that the conduct of the athletic games in question by complainant, through the agency of the two athletic associations, was an operation of the state essential to the execution of its governmental functions, but on the contrary showed that same was not a governmental function, and that the tax in question was valid and that the suit should be dismissed.

Upon appeal this decree was reversed, and the Circuit Court of Appeals held that "we are of opinion that appellant has stated a case for equitable relief" and directed that an interlocutory injunction issue and the case be heard on its merits. Regents of the University System of Georgia v. Page (C.C.A.) 81 F.(2d) 577, 581.

Upon the trial on the merits, evidence was introduced which I find fully sustained the allegations of the petition.

As I construe the opinion of the Circuit Court of Appeals, the facts proved being the same as those alleged and only expanded to establish the allegations in greater detail, it requires a finding by this court in favor of complainant and against the asserted claim of liability for the tax or obligation to collect it. While the Circuit Court of Appeals stated in its opinion that a ruling on this question would be premature, nevertheless I construe the opinion to mean that, if the facts alleged in the petition were proved, a decision to the above effect must follow and an injunction issue.

Therefore, upon authority of the decision of the Circuit Court of Appeals, which I must, of course, follow, I file these conclusions of law:

1. Complainant, though a distinct legal entity, is a governmental corporation, created by the State of Georgia for the purpose of having supervision of the public higher institutions of learning in the state and to conduct the University System of the state.

2. The title to all property of every nature whatever and all funds held by complainant, directly or by its agents and instrumentalities, including the funds of said athletic associations, are held by complainant as an instrumentality of the State of Georgia, and are the property and funds of the State of Georgia.

3. Complainant was given, by the act creating it, full authority to establish and approve such rules and regulations and courses of study in its educational program as it saw fit.

4. The adoption, direction, and supervision by complainant, acting directly or through its agents and instrumentalities, of the program of education at the two branches of the University System of Georgia, the University of Georgia and the Georgia School of Technology, including the promotion of physical training as an integral part of its educational activities, in-

cluding intercollegiate athletic contests, such as football, and the collection of admission fees at games when admission fees were charged, were, under the decision of the Circuit Court of Appeals in this case, the exercise of an essential governmental function of the State of Georgia; and there existed no liability upon its agents or instrumentalities for any federal admission tax or penalty for failure and refusal to collect any such tax, and an injunction should issue restraining the defendant from attempting to collect the alleged taxes, debt, or penalties, except by due proceedings in a court of competent jurisdiction.

Let a decree in conformity with the above findings be prepared and submitted to the court.