ALLEN, COLLECTOR OF INTERNAL REVENUE, *v.* REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.

No. 882. Argued April 28, 29, 1938.—Decided May 23, 1938.

*Mr. J. Louis Monarch,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Messrs. Sewall Key* and *Carlton Fox* were on the brief, for petitioner.

*Mr. Marion Smith,* with whom *Messrs. M. J. Yeomans,* Attorney General of Georgia, *M. E. Kilpatrick* and *Hamilton Lokey* were on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed by *Messrs. William S. Ervin,* Attorney General of Minnesota, *John H. Mitchell,* Attorney General of Iowa, *Gaston L. Porterie,* Attorney General of Louisiana, *Richard C. Hunter,* Attorney General of Nebraska, and *Henry H. Foster,* Attorney for University of Nebraska, *Orland S. Loomis,* Attorney General of Wisconsin, *Raymond W. Starr,* Attorney General of Michigan, *Clarence V. Beck,* Attorney General of Kansas, *Roy McKittrick,* Attorney General of Missouri, *A. A. F. Seawell,* Attorney General of North Carolina, *Alvin C. Strutz,* Attorney General of North Dakota, and *Herbert S. Duffy,* Attorney General of Ohio, on behalf of their respective States; by *Messrs. Roy H. Beeler,* Attorney General, *Nat Tipton,* Assistant Attorney General, of Tennessee, and *Mr. Henry B. Witham,* on behalf of that State and its University; by *Messrs. Otto Kerner,* Attorney General of Illinois, and *Sveinbjorn Johnson,* on behalf of that State; and by *Messrs. E. W. Mullins, Harold Major, D. W. Robinson, Jr.,* and *James F. Dreher,* on behalf of the University of South Carolina, and other educational institutions of that State; all in support of respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The question on the merits is whether the exaction of the federal admissions tax, in respect of athletic contests in which teams representing colleges conducted by the respondent participate, unconstitutionally burdens a governmental function of the State of Georgia. The petition also challenges the respondent's ability to maintain a suit to enjoin the collection of the tax and to substitute as defendant the successor in office of the Collector originally impleaded. The court below decided all the ques-

tions involved against the petitioner.[1] Because of their importance we granted certiorari.

Section 500 (a) (1) of the Revenue Act of 1926,[2] as amended by § 711 of the Revenue Act of 1932[3] imposes "a tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place . . . to be paid by the person paying for such admission; . . ."[4] Subsection (d) commands that the price (exclusive of the tax to be paid by the person paying for admission) at which every admission ticket is sold shall be conspicuously printed, stamped, or written on the face or back of that portion of the ticket which is to be taken up by the management and imposes a penalty for failure to comply with its terms. Section 502 requires the person receiving payments for admissions to collect the tax and make return in such form as the Commissioner of Internal Revenue may prescribe by regulation. Section 1102 (a)[5] imposes the duty on persons who collect the tax to keep records and render statements, under oath, and to make returns as required by the Secretary of the Treasury. Section 1114[6] (b) and (d) fixes penalties for failure to collect or pay over and subsection (e) provides for the personal liability of one collecting the admission charge

[1] The defendant in the District Court was W. E. Page, the petitioner's predecessor in office. That court dismissed the bill. 10 F. Supp. 901. The Circuit Court of Appeals reversed. 81 F. 2d 577. After answer and a hearing on the merits the District Court awarded an injunction. 18 F. Supp. 62. The Circuit Court of Appeals permitted the substitution of the petitioner for Page and affirmed the decree by a divided court. 93 F. 2d 887.

[2] c. 27, 44 Stat. 9, 91; U. S. C. Tit. 26, §§ 940–944.

[3] c. 209, 47 Stat. 169, 271; U. S. C. Tit. 26, § 940 (a) (2).

[4] Exemptions touching admissions of certain persons and all admissions to specified types of entertainment or exhibitions are not involved. Subsection (e), 47 Stat. 271.

[5] 44 Stat. 112; U. S. C. Tit. 26, § 960.

[6] 44 Stat. 116; U. S. C. Tit. 26, §§ 494, 856, 921.

and for distraint by the Collector of Internal Revenue for taxes and penalties. Section 607 of the Revenue Act of 1934 [7] requires the person charged with the collection of the tax to hold the amount collected as a special fund in trust for the United States, confers the right to assess him with the amount so collected and withheld, including penalties, and, in connection with R. S. 3187, [8] authorizes the Collector of Internal Revenue to distrain therefor.

The respondent is a public corporation, created by Georgia as an instrumentality of the State, having control and management of The University of Georgia and the Georgia School of Technology. Athletics at these institutions are conducted under the respondent's authority by two corporations, the University of Georgia Athletic Association and the Georgia Tech. Athletic Association. The expense of physical education and athletic programs at each school is defrayed almost entirely from the admission charges to athletic contests and students' athletic fees collected for the purpose. During September and October 1934 football games were played at the institutions, for which admissions were charged and collected by the associations. Each ticket showed on its face the admission price, the amount of the tax, and the total of the two, and also carried the following printed notice:

"The University of Georgia [or Georgia School of Technology] being an instrumentality of the government of the State of Georgia, contends that it is not liable for any admission tax. The amount stated as a tax is so stated because the University is required to do so by Treasury regulations pending a decision as to its liability in this respect. This amount is collected by the University as a part of the admission and will be retained as such unless it is finally determined that the University is itself liable for the tax."

[7] c. 277, 48 Stat. 680, 768; U. S. C. Tit. 26, § 1551.
[8] U. S. C. Tit. 26, § 1580.

Each association deposited the total collected as the disputed tax in a separate bank account, apart from its other funds, but made no return thereof. The Collector prepared returns for the amounts. In consequence of the associations' neglect to pay the amounts so returned, the Commissioner assessed each association in the amount shown by return made for it and certified the assessments to the Collector, who made demands for payment. These were ignored and the Collector filed liens, issued warrants, and levied upon the deposit accounts. The respondent then brought suit in which it prayed a decree that, as an agency of the State performing an essential governmental function in the conduct of the games, it was immune from the tax, and sought injunctions, temporary and permanent, to restrain the Collector from proceeding further to collect the sums demanded. From a decree awarding a final injunction the Collector appealed; but, pending appeal, he resigned and, before the hearing, died. Over objection the Circuit Court of Appeals ordered the petitioner substituted as appellant and affirmed the decree. We are of opinion that the court below rightly decided the procedural questions but erred as to the merits.

*First.* If the suit was maintainable against his predecessor in office the substitution of petitioner was lawful. We are not unmindful of the principle that suits against officers to restrain action in excess of their authority or in violation of statutory or constitutional provisions are in their nature personal and that a successor in office is not privy to his predecessor in respect of the alleged wrongful conduct.[9] As a result of the inconvenience resulting from the lack of power to substitute one who succeeded to the office of an alleged offending official, to

[9] *Pennoyer* v. *McConnaughy*, 140 U. S. 1, 10; *United States ex rel. Bernardin* v. *Butterworth*, 169 U. S. 600, 603–604; *Philadelphia Company* v. *Stimson*, 223 U. S. 605, 620–621; *Irwin* v. *Wright*, 258 U. S. 219, 222.

which this court has called attention,[10] Congress adopted the Act of February 13, 1925,[11] which provides:

, ". . . Where, during the pendency of an action, suit, or other proceeding brought by or against an officer of the United States . . . and relating to the present or future discharge of his official duties, such officer dies, resigns, or otherwise ceases to hold such office, it shall be competent for the court wherein the action, suit, or proceeding is pending, whether the court be one of first instance or an appellate tribunal, to permit the cause to be continued and maintained by or against the successor in office of such officer, . . ."

The motion to substitute the petitioner asserted that, unless restrained, he would continue in the course pursued by his predecessor. The answer did not deny this allegation but relied upon the claim that the present Collector is not privy to the acts of the former one. In *Ex parte La Prade*, 289 U. S. 444, this court reserved the question whether in such a situation the successor might be substituted. As the present case is within the letter of the Act and within the inconvenience intended to be obviated by its adoption, the substitution was properly permitted.

*Second.* If the tax, the collection of which was threatened, constituted an inadmissible burden upon a governmental activity of the State, the circumstances disclosed render the cause one of equitable cognizance and take it out of the prohibition of R. S. 3224.[12] The respondent has long been of opinion that exaction of the tax in respect of games played under the auspices of The University of Georgia and the Georgia School of Technology constitutes an unconstitutional burden upon an essential governmental activity of Georgia. At first

[10] See *Ex parte La Prade*, 289 U. S. 444, 456–459.

[11] c. 229, 43 Stat. 936, U. S. C. Tit. 28, § 780.

[12] U. S. C. Tit. 26, § 1543.

the respondent collected the tax as required by the Act, paid it over to the Treasury, and made claim for refund. The claim was rejected on the ground that the tax was paid by the patron of the game, and that the athletic associations and the respondent were mere collecting agents having no interest in the fund which would justify repayment to them if it had been illegally collected. Believing the basis of the Commissioner's refusal to refund was sound,[18] the respondent then resorted to the expedient of collecting the amount of the tax under the reservation printed upon the tickets.

The bill, after reciting the facts as above summarized, alleges that the statute imposes a tax upon the individuals who purchase tickets, but, properly construed, is inapplicable to those purchasing tickets to the football games in question. It further asserts that, in respect of those games, neither the respondent nor the athletic associations collected any tax from purchasers of admissions; that if the statute be construed to justify the Collector in seeking to force respondent to pay sums representing alleged taxes due from numerous individuals it is unconstitutional as an attempt to interfere with and control and to burden the state's educational activities and unlawfully to impose on the state government the duty of collecting taxes for the federal government; that the action of the petitioner in issuing warrants of distraint is either an attempt to collect from respondent taxes alleged to be due from various individuals, or to impose upon the respondent penalties, criminal and punitive in nature.

The petitioner insists the bill shows the tax was in fact collected from the patrons of the games, and the allega-

---

[18] Compare *Shannopin Country Club* v. *Heiner,* 2 F. 2d 393; *Lafayette Worsted Co.* v. *Page,* 6 F. 2d 399; *Union Pacific Ry. Co.* v. *Bowers,* 33 F. 2d 102; *Wourdack* v. *Becker,* 55 F. 2d 840; but see *Builders' Club* v. *United States,* 14 F. Supp. 1020.

tion that no tax was collected is a mere conclusion of law which the court should ignore; that the trial court was without jurisdiction to determine in this suit for injunction whether or not taxes had been collected by respondent; that the Revenue Act imposes no liability for the tax upon the vendor of the tickets who fails to collect, although it does impose a penalty for wilful failure to collect the tax and other penalties; that, as the respondent collected the tax, it has no standing in its capacity as a collecting agent to deny the validity of the exaction, and, as a collecting agent, could not create a right to resist collection by the government by forcing a stipulation upon purchasers of tickets that the amount collected should belong to the agent if it were able to defeat the government; that, as such agent, respondent has no interest adverse to the United States; that the stipulation in question did not amount to an assignment of a ticket purchaser's claim for refund or, if it did, the purchaser has thereby lost his right to recover the tax by reason of the prohibition of assignment of claims against the United States embodied in R. S. 3477; [14] that respondent or the athletic associations would have had an adequate remedy at law for recovery of the amounts assessed against them had they paid the assessments; and finally that R. S. 3224 [15] prohibits the issue of an injunction against collection.

To these contentions respondent replies that while it placed the required information on the ticket and segregated the equivalent of the tax from the proceeds of tickets sold to avoid the imposition of penalties on its personnel, the notation on the tickets shows that it did not undertake to collect and did not in fact collect the tax;

[14] U. S. C. Tit. 31, § 203.

[15] "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." U. S. C. Tit. 26, § 1543.

that, by refusal to collect, it took itself out of the category of an agent who voluntarily acted on behalf of the government; that, while the statute places no liability upon respondent for the tax as such, it imposes upon the respondent civil and criminal penalties for refusal to collect it; that respondent is not an assignee of the claims of its patrons, but, if the tax is invalid, is owner in its own right of the entire amount paid by each purchaser; that respondent has no remedy at law because if it had paid the tax out of its own funds it could not have claimed refund of payment thus voluntarily made for its patrons' accounts; that state officials may not be required to collect an illegal tax as a condition precedent to contesting its validity; that § 3224 has no application to this suit.

The dispute as to the propriety of a suit in equity must be resolved in the light of the nature of the controversy. The respondent in good faith believes that an unconstitutional burden is laid directly upon its transactions in the sale of licenses to witness athletic exhibitions conducted under authority of the State and for an essential governmental purpose. The State is entitled to have a determination of the question whether such burden is imposed by the statute as construed and applied. It is not bound to subject its public officers and their subordinates to pains and penalties criminal and civil in order to have this question settled, if no part of the sum collected was a tax, and if the assessment was in truth the imposition of a penalty for failure to exact a tax on behalf of the United States. And if the respondent is right that the statute is invalid as applied to its exhibitions, it ought not to have to incur the expense and burden of collection, return, and prosecution of claim for refund of a tax upon others which the State may not lawfully be required to collect. These extraordinary circumstances we think justify resort to equity.

What we have said indicates that R. S. 3224, *supra,* does not oust the jurisdiction. The statute is inapplicable in exceptional cases where there is no plain, adequate, and complete remedy at law.[16] This is such a case, for here the assessment is not of a tax payable by respondent but of a penalty for failure to collect it from another. The argument that no remedy need be afforded the respondent is bottomed on the assumption that it is a mere collecting agent which cannot be hurt by collecting and paying over the tax; but this argument assumes first, that respondent did in truth collect a tax and, second, that the imposition of the tax on the purchase of admissions cannot burden a state activity. This is arguing in a circle, for these are the substantial matters in controversy. We hold that the bill states a case in equity as, upon the showing made, the respondent was unable by any other proceeding adequately to raise the issue of the unconstitutionality of the Government's effort to enforce payment.

*Third.* We come then to the merits. For present purposes we assume the truth of the following propositions put forward by the respondent: That it is a public instrumentality of the state government carrying out a part of the State's program of public education; that public education is a governmental function; that the holding of athletic contests is an integral part of the program of public education conducted by Georgia; that the means by which the State carries out that program are for determination by the state authorities, and their determination is not subject to review by any branch of the federal Government; that a state activity does not cease to be governmental because it produces some income; that the tax is imposed directly on the state activity and

---

[16] *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498, 509.

directly burdens that activity; that the burden of collecting the tax is placed immediately on a state agency. The petitioner stoutly combats many of these propositions. We have no occasion to pass upon their validity since, even if all are accepted, we think the tax was lawfully imposed and the respondent was obligated to collect, return and pay it to the United States.

The record discloses these undisputed facts: The stadium of the University of Georgia has a seating capacity of 30,000, cost $180,000, and was paid for by borrowed money which is being repaid by the Athletic Association, whose chief source of revenue is admissions to the contests in the stadium. $158,000 of the amount borrowed has been repaid since the stadium was completed in 1929. The student enrollment is about 2,400. Each student pays an annual athletic fee of $10.00 which confers the privilege of free admission to all the school's athletic events. All admissions collected, and the tax paid on them, are paid by the general public, none by the students.[17] The total receipts of the Athletic Association from all sources for the year ending August 31, 1935, were $91,620.25 of which $71,323.27 came from admissions to football games.

The stadium of the Georgia School of Technology has a seating capacity of 29,000. It cost $275,000 and was paid for by a gift of $50,000 and from admissions charged and student fees. The enrollment is about 2,000 students, each of whom pays an annual athletic fee of $7.50 which gives the privilege of free admission to all games. All admissions collected, and the tax paid on them, are paid by the general public, none by the students.[17] The total receipts of the Athletic Association for the six months ended December 31, 1934, were $119,436.75 of which $74,168.51 came from admissions to football games.

[17] Student athletic fees are not treated as admissions subject to the tax. See Cumulative Bulletin XI-2 (July–December 1932), p. 522.

It is evident that these exhibition enterprises are comparatively large and are the means of procuring substantial aid for the schools' programs of athletics and physical education. In final analysis the question we must decide is whether, by electing to support a governmental activity through the conduct of a business comparable in all essentials to those usually conducted by private owners, a State may withdraw the business from the field of federal taxation.

When a State embarks in a business which would normally be taxable, the fact that in so doing it is exercising a governmental power does not render the activity immune from federal taxation. In *South Carolina* v. *United States,* 199 U. S. 437, it appeared that South Carolina had established dispensaries for the sale of liquor and prohibited sale by other than official dispensers. It was held that the United States could require the dispensers to take licenses and to pay license taxes under the Internal Revenue laws applicable to dealers in intoxicating liquors, and this notwithstanding the State had established the dispensary system in the valid exercise of her police power. In *Ohio* v. *Helvering,* 292 U. S. 360, it was shown that Ohio, in the exercise of the same power, had created a monopoly of the distribution and sale of intoxicating liquors through stores owned, managed, and controlled exclusively by the State. It was sought to enjoin the Commissioner of Internal Revenue and his subordinates from enforcing against the State, her officers, agents, and employes, penalties for the nonpayment of federal excises on the sale of liquor. Relief was denied and the views expressed in the *South Carolina* case were reaffirmed. In *Helvering* v. *Powers,* 293 U. S. 214, the court found that Massachusetts, in the exercise of the police power, had appointed a Board of Trustees to operate a street railway company's properties for a limited time. It was held that though the

trustees were state officers, their salaries were subject to federal income tax because the State could not withdraw sources of revenue from the federal taxing power by engaging in a business which went beyond usual governmental functions and to which, by reason of its nature, the federal taxing power would normally extend.

The legislation considered in *South Carolina* v. *United States, supra,* provided for a division of the profits of the dispensary system between the state treasury and cities and counties. Thus the enterprise contributed directly to the sustenance of every governmental activity of the State. In the present instance, instead of covering the proceeds or profits of the exhibitions into the state treasury, the plan in actual operation appropriates these monies in ease of what the State deems its governmental obligation to support a system of public education. The difference in method is not significant. The important fact is that the State, in order to raise funds for public purposes, has embarked in a business having the incidents of similar enterprises usually prosecuted for private gain. If it be conceded that the education of its prospective citizens is an essential governmental function of Georgia, as necessary to the preservation of the State as is the maintenance of its executive, legislative, and judicial branches, it does not follow that if the State elects to provide the funds for any of these purposes by conducting a business, the application of the avails in aid of necessary governmental functions withdraws the business from the field of federal taxation.

Under the test laid down in *Helvering* v. *Gerhardt, ante,* p. 405, however essential a system of public education to the existence of the State, the conduct of exhibitions for admissions paid by the public is not such a function of state government as to be free from the burden of a non-discriminatory tax laid on all admissions to public exhibitions for which an admission fee is charged.

The opinion in *South Carolina* v. *United States, supra,* at pages 454–457, points out the destruction of the federal power to tax which might result from a contrary decision.[18]

Moreover, the immunity implied from the dual sovereignty recognized by the Constitution does not extend to business enterprises conducted by the States for gain. As was said in *South Carolina* v. *United States, supra,* at p. 457: "Looking, therefore, at the Constitution in the light of the conditions surrounding at the time of its adoption, it is obvious that the framers in granting full power over license taxes to the National Government meant that that power should be complete, and never thought that the States by extending their functions could practically destroy it." Compare *Helvering* v. *Therrell,* 303 U. S. 218. The decree is

*Reversed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

MR. JUSTICE BLACK concurs in the result.

MR. JUSTICE STONE, concurring in the result.

Congress, by R. S. § 3224, has declared that "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." While

---

[18] "Mingling the thought of profit with the necessity of regulation may induce the State to take possession, in like manner, of tobacco, oleomargarine, and all other objects of internal revenue tax. If one State finds it thus profitable other States may follow, and the whole body of internal revenue tax be thus stricken down." (p. 454.)

"The same argument which would exempt the sale by a State of liquor, tobacco, etc., from a license tax would exempt the importation of merchandise by a State from import duty." (p. 455.) (Compare *Board of Trustees* v. *United States,* 289 U. S. 48, 59.)

"Obviously, if the power of the State is carried to the extent suggested, and with it is relief from all Federal taxation, the National

I agree with the decision of the Court on the merits, I am not persuaded that this statute does not mean what it says, or that the suit is not one to restrain collection of the tax. I can only conclude, as I did in *Miller* v. *Standard Nut Margarine Co.*, 284 U. S. 498, 511, that the statute deprived the district court of jurisdiction to entertain respondent's suit, and that the judgment should be reversed with direction that the cause be dismissed.

MR. JUSTICE REED concurring in the result.

Except for the holding that injunction is a proper remedy to test the position of the Regents, I agree with the opinion of the Court. As even a small breach in the general scheme of taxation gives an opening for the disorganization of the whole plan, it seems desirable to express dissent from the conclusion that the Regents may utilize the summary remedy of injunction, over the objection of the Government, as a means of testing the applicability of a tax law to them.

The facts set out in the opinion of the circumstances and agreement under which the money threatened to be distrained was collected make it quite clear, it seems to me, that the Regents collected tax moneys from the spectators. Any allegation in the petition to the contrary is an erroneous conclusion of law. The Collector sought to cover this money into the Treasury. Section 502 (a) of the Revenue Act of 1926 [1]; § 607 of the Rev-

Government would be largely crippled in its revenues. Indeed, if all the States should concur in exercising their powers to the full extent, it would be almost impossible for the Nation to collect any revenues. In other words, in this indirect way it would be within the competency of the States to practically destroy the efficiency of the National Government." (p. 455.)

[1] Sec. 502 (a). Every person receiving any payments for such admission, dues, or fees shall collect the amount of the tax imposed by section 500 or 501 from the person making such payments. Every club or organization having life members shall collect from such

enue Act of 1934[2] and § 3224 of the Revised Statutes[3] make it clear that no injunction will lie to restrain such action.[4]

Section 3224 was enacted in 1867, and until recent years was followed by the courts without deviation. Exceptions were made to protect taxpayers against collection of penalties.[5] In an exceptional case of "special and extraordinary" circumstances,[6] where a "valid . . . tax could by no legal possibility have been assessed against respondent . . ." this Court permitted an injunction. "Special and extraordinary" circumstances have multiplied. Here the lower court found them "demonstrated by the fact that the Regents had actually paid the tax in former years, and filed a claim for refund which was denied on the ground that they had not

members the amount of the tax imposed by section 501. Such persons shall make monthly returns under oath, in duplicate, and pay the taxes so collected to the collector of the district in which the principal office or place of business is located. (U. S. C., Title 26, §§ 955, 956.)

[2] Sec. 607. Enforcement of Liability for Taxes Collected. Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay such tax over to the United States, the amount of the tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose. (U. S. C., Title 26, § 1551.)

[3] Sec. 3224. No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. (U. S. C., Title 26, § 1543.)

[4] *Gouge* v. *Hart*, 250 F. 802 (W. D. Va.), appeal dismissed, 251 U. S. 542; *Ralston* v. *Heiner*, 24 F. 2d 416 (C. C. A. 3d); *Calkins* v. *Smietanka*, 240 F. 138 (N. D. Ill.); *Seaman* v. *Guaranty Trust Co.*, 1 F. 2d 391 (S. D. N. Y.).

[5] *Lipke* v. *Lederer*, 259 U. S. 557; *Regal Drug Corp.* v. *Wardell*, 260 U. S. 386.

[6] *Miller* v. *Nut Margarine Co.*, 284 U. S. 498.

borne the burden of any part thereof." It may be assumed, and petitioner admits, that respondents may not pay the moneys and then sue to recover them. The fallacy underlying the opinion of the Court is the assumption that some remedy is necessary. Respondents, being merely collectors of tax moneys, are not entitled either to enjoin collection of these moneys or to pay and sue to recover them.

There is no reason why the State of Georgia should risk or ask its agents to risk penalties to determine whether this tax is collectible. Respondents would lose nothing by collecting the tax and turning it over to the United States. If they desire to stand upon their own conception of the law and refuse to collect the tax, they must take the risks of such action. Every other taxpayer or collector of admission taxes must make the same choice.

The prompt collection of revenue is essential to good government. Summary proceedings are a matter of right.[7] The Government has been sedulous to maintain a system of corrective justice.[8] Any departure from the principle of "pay first and litigate later" threatens an essential safeguard to the orderly functioning of government. Here an injunction is approved when the petitioner below had little more legitimate interest in the collection of the tax than a curiosity to know whether the customers of its athletic spectacles, the real taxpayers, were constitutionally subject to such an exaction.

I am authorized to say that Mr. Justice Stone concurs in this opinion. Mr. Justice Black concurs in this opinion except in so far as it approves the reasoning of the Court on the question of state immunity from interference by federal taxation.

---

[7] *Cheatham* v. *United States*, 92 U. S. 85, 88, 89.

[8] Compare *Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337.

MR. JUSTICE BUTLER, dissenting.

I am of opinion that the District Court had jurisdiction.

So far as concerns the validity of the tax, the University is the State. It is an instrumentality carrying on the state's program of public education. The holding of the athletic contests in question is an integral part of that program and does not cease to be such because it produces income. The tax is imposed directly on and burdens that activity of the State. The Court assumes the facts above stated and decides the case on that basis. The tax is laid on the charge paid for admission, is to be borne by the person paying for admission, and is to be collected by the State and handed over to the United States. It is hard to understand how the collection by the State of fees for the privilege of attendance brings, even for the purpose of federal taxation, its work of education to the level of selling intoxicating liquor, *South Carolina* v. *United States*, 199 U. S. 437; *Ohio* v. *Helvering*, 292 U. S. 360, operating a railway, *Helvering* v. *Powers*, 293 U. S. 214, or conducting any other commercial activity. The tax seems plainly within the rule of state immunity from federal taxation as hitherto understood and applied. I would affirm the judgment of the Circuit Court of Appeals.

MR. JUSTICE MCREYNOLDS concurs in this opinion.