**WILMETTE PARK DIST. v. CAMPBELL, Collector of Internal Revenue.**

No. 9567.

United States Court of Appeals Seventh Circuit.

Feb. 23, 1949.

Rehearing Denied March 18, 1949.

Theron L. Caudle, Asst. Atty. Gen., Arthur L. Jacobs, Atty., U. S. Department of Justice, of Washington, D. C., Otto Kerner, Jr., U. S. Atty., of Chicago, Ill., George A. Stinson and Ellis N. Slack, Sp. Assts. to Atty. Gen., and Leroy R. Krein, Asst. U. S. Atty., of Chicago, Ill., for appellant.

Henry J. Brandt and Gilbert H. Hennessey, Jr., both of Chicago, Ill. (Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, MINTON, Circuit Judge, and LINDLEY, District Judge.

MAJOR, Chief Judge.

This is an appeal from a judgment in favor of the plaintiff, entered September 29, 1947, 76 F.Supp. 924, in an action to recover certain taxes theretofore paid to the defendant as the result of an alleged illegal levy and assessment. The taxes involved are referred to as an "admissions tax" and include the years 1942 through 1945.

The findings of fact are predicated in the main upon a stipulation of the parties and are not in dispute. Plaintiff is a body politic and corporate, organized in 1908 under the laws of Illinois. It is adminis-

tered by a Board of Commissioners elected by the people residing in the district. Plaintiff, a park district, consists of an area of approximately 2.8 square miles located within the incorporated area of the Village of Wilmette, Cook County, Illinois, which village has a population of approximately 20,000. Included within the park district is Washington Park, which extends along the shore of Lake Michigan for approximately three-fourths of a mile. The land area of this park was acquired partly by grant from the State of Illinois, partly by purchase and partly by the exercise of the right of eminent domain. For many years, a portion of this park adjacent to Lake Michigan has been used as a bathing beach during the summer months.

Plaintiff during the involved years made two types of charges to users of the beach and beach facilities: (1) A flat rate for a season ticket issued on either an individual or family basis, and (2) a single daily admission charge of 50¢ on week days and $1.00 on Saturdays, Sundays and holidays, for which no tickets were issued. Plaintiff supplied for use in conjunction with the bathing beach a bathhouse containing clothing lockers, toilets and washrooms, an automobile parking area, life-saving equipment, flood lighting, drinking fountains, showers, spectator benches, bicycle riding, first-aid personnel and supplies, and it employed in connection with the operation and maintenance of the bathing beach, a beach superintendent, a secretary, beach maintenance labor, life guards, check room and gate check workers, general office workers and policemen. While the beach facilities were utilized principally by the residents of the community, the facilities were available to and were utilized by non-residents.

The charge made by plaintiff for the use of the beach and beach facilities was made to cover maintenance, operation and some capital improvements. Over the years, the charge for the use of the beach and beach facilities was intended merely to approximate these costs and not to produce net income or profit to the plaintiff.

From Gary, Indiana, to Lake Bluff, Illinois, there were twenty-nine municipally operated bathing beaches, some of which did and some of which did not charge admission. From South Chicago to Highland Park, Illinois, there were fifteen bathing beaches located on Lake Michigan operated by private persons for profit, of which nine charged admissions and six were operated by hotels and clubs for the use of their patrons, residents and members, without an express or specific admission charge.

On July 24, 1941, the Collector of Internal Revenue notified plaintiff to collect an admission tax on all bathing beach tickets sold on and after July 25, 1941. This the plaintiff refused to do, and subsequently the United States Commissioner of Internal Revenue assessed and collected from plaintiff the amount of the admissions tax claimed to be due on the amounts paid as admissions to plaintiff's bathing beach during the years 1942 through 1945. Claims for refund of such amounts were rejected and the instant suit was instituted.

Plaintiff, in support of the judgment, makes two contentions, (1) that the charge which it made to those using its beach was not for admission subject to tax within Sec. 1700 of the Internal Revenue Code, 26 U. S.C.A. § 1700, and (2) that the imposition of the tax was unconstitutional and void. The court below agreed with the plaintiff as to its first contention and its decision was predicated on that basis.

Sec. 1700 of the Internal Revenue Code, 26 U.S.C.A., provides, "There shall be levied, assessed, collected, and paid * * * a tax * * * of the amount paid for admission to any place, including admission by season ticket or subscription," and that the tax imposed "shall be paid by the person paying for such admission." Sec. 1715 provides, "Every person receiving any payments for admissions * * * subject to the tax imposed by section 1700 * * * shall collect the amount thereof from the person making such payments," and that the taxes so collected "shall be paid to the collector * * *."

Sec. 101.2 of Treasury Regulation 43 provides, "The tax is imposed on 'the amount paid for admission to any place,' and applies to the amount which must be paid in order to gain admission to a place * * *. The term 'admission' means the right or privilege to enter into a place," and Sec. 101.3

of the same Regulation provides, "The tax under section 1700 (a) of the Code is on the amount paid for admission to any place. 'Place' is a word of very broad meaning, and it is not defined or otherwise limited by the Code. But the basic idea it conveys is that of a definite inclosure or location. The phrase 'to any place' therefore, does not narrow the meaning of the word 'admission,' except to the extent that it implies that the admission is to a definite inclosure or location."

■ Thus it seems clear that the charge which plaintiff makes upon those who enter its bathing beach comes squarely within the statutory definition, as well as that of the Regulation, of the term "admission." Even if it be true, as argued by the plaintiff, that the charge is essentially for the use of the facilities which plaintiff provides, the fact remains that such facilities cannot be utilized until entrance is made and that the latter purpose is accomplished only by payment of the admission charge. Moreover, the person after entering the place has the option of using the facilities or not as such person sees fit. The court below expressed the view that the charge made by plaintiff was a use rather than an admission tax, but at the same time stated, [76 F.Supp. 924, 925] "If a public beach is operated for profit, the charge for tickets would not be a use tax but an admission within the meaning of section 1700 of the Internal Revenue Code." It was on this basis that the court distinguished Allen v. Regents, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448, and it is upon the same basis that plaintiff here attempts to distinguish the Allen case and also the decision of this court in Exmoor Country Club v. United States, 7 Cir., 119 F.2d 961.

■ In our view, neither of these cases can properly be thus distinguished. Certainly it cannot be contended that the profit element was a critical or determining factor in either. In fact, these cases furnish strong support for the defendant's contention. More than that, we think without the aid of such authorities that plaintiff's contention is not tenable. A holding that the question for decision turns upon the contingency of a profit would lead to an incongruous result. For instance, with two

beaches operated side by side in the same manner as plaintiff's beach was operated, one at a loss and the other at a profit, the entrance charge to the former would be characterized as a use tax and the entrance charge to the latter as an admission charge. Under such a theory, the patrons of the former would escape the tax, while those of the latter would be liable. And this arbitrary distinction would arise not only as to beaches, whether publicly or privately operated, but to any other place where a charge was made for entrance and wherein facilities were furnished for the use or enjoyment of those who entered.

While it is not of any great importance, it is pertinent to note that the plaintiff in its complaint relied solely on the unconstitutionality of the tax. The theory that the charge made by the plaintiff was not for admission to its beach and therefore not liable for the tax was apparently evolved during the trial. The court took note of the situation and held, no doubt correctly, that the plaintiff had a right to amend its complaint to conform to the proof. The only point to this situation is that the plaintiff when it filed its complaint evidently did not have any confidence in the theory on which the court decided in its favor. In our view, the court's decision in this respect was erroneous.

■ The lower court did not decide the constitutional issue involved Plaintiff's contention in this respect, briefly stated, is (1) that its acquisition and maintenance of a bathing beach constitutes the exercise of a governmental function and is immune from federal taxation, (2) that the duty of collecting federal taxes cannot be imposed by Congress upon elected Commissioners of a local governmented body and cannot make the costs of collecting the same a charge upon general tax revenues, and (3) that in view of the fact that the Commissioners did not collect the admission tax from beach patrons, its payment constitutes a burden upon plaintiff's tax revenues. As to points (1) and (2), we think every argument advanced by the plaintiff is answered and controlled by Allen v. Regents, supra. In that case the court sustained the constitutionality of the federal admissions tax

when applied to football games conducted by state collegiate institutions. The state contended, as does the plaintiff here, that the tax is an unconstitutional interference with and burden upon an essential governmental function of the state. The court in rejecting that contention made the following statement equally relevant to the instant situation, 304 U.S. at page 449, 58 S.Ct. at page 984, 82 L.Ed. 1448:

"For present purposes we assume the truth of the following propositions put forward by the respondent: That it is a public instrumentality of the State government carrying out a part of the State's program of public education; that public education is a governmental function; that the holding of athletic contests is an integral part of the program of public education conducted by Georgia; that the means by which the State carries out that program are for determination by the State authorities, and their determination is not subject to review by any branch of the federal Government; that a state activity does not cease to be governmental because it produces some income; that the tax is imposed directly on the State activity and directly burdens that activity; that the burden of collecting the tax is placed immediately on a State agency. The petitioner stoutly combats many of these propositions. We have no occasion to pass upon their validity since, even if all are accepted, we think the tax was lawfully imposed and the respondent was obligated to collect, return and pay it to the United States."

Plaintiff makes a feeble effort to distinguish this case, but in our judgment without success. It is claimed in that case that the venture was operated at a profit and that the payment of the tax as well as the expenses of collection merely reduced the net profits and therefore did not infringe upon the tax revenues of the state. As already noted, we do not understand that decision to depend upon the issue of profit, and we are of the view that immunity from federal taxation cannot be made to rest upon such a variable factor.

It is true the Allen case is distinguishable on the facts in one respect—that is, there, the state agency (university) issued tickets on which was stated the admission price as well as the amount of the tax, with a notice printed on the ticket to the effect that the state claimed it was not liable for the admission tax and that it would be retained by the state unless its liability for the same was finally determined. As a result, when its liability was thus determined, it had in its treasury the admissions tax which it had collected from patrons available for the purpose of discharging its obligation to the federal government. In contrast, plaintiff's officials refused after notice to collect the tax from its patrons. As a result, it has been compelled to resort to its general funds for the purpose of paying the tax, and we suppose that if plaintiff is not permitted to recover in the instant action, the depletion in its general funds occasioned by payment of the tax therefrom will have to be made up in some manner, presumably by a tax upon all the property of the district.

This represents the basis for the argument in support of point (3) above noted. In our view, this contention is beside the issue. We doubt if anyone would contend that the federal government could impose a tax upon the general revenue of a local government, but that has not been done. The tax was imposed upon those who paid for admission to the beach. The collection of the tax and its payment to the federal government was the only duty imposed upon plaintiff. This its officials refused to do. To permit plaintiff to escape its obligation because its elected officials refused to perform their statutory duty would in effect nullify the statute. Of course, the Commissioners had a right, as argued, to test the constitutionality of the tax, but having done so and lost, we see no reason why their error in judgment should be visited upon the federal government. The question as to where the money to pay the taxes is to be procured may be of concern as between the plaintiff and its Commissioners who refused to obey the statutory mandate, but in our view it raises no question as between the plaintiff and the federal government.

Much is said in the briefs, especially in plaintiff's brief, relative to the decision in State of New York v. United States, 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326, which we find no occasion to discuss.

In our view, the admissions tax is constitutional and was legally imposed and collected by the defendant. It follows that the judgment of refund was erroneous. It is, therefore, reversed and remanded, with directions to enter a judgment favorable to the defendant.