## UNITED STATES v. STATE OF NEW YORK et al.

### No. 124.

Circuit Court of Appeals, Second Circuit.

Feb. 7, 1944.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Paul R. Russell, Sp. Assts. to the Atty. Gen., and Irving Higbee, U. S. Atty., and B. F. Tompkins, Asst. U. S. Atty., both of Syracuse, N. Y., for plaintiff-appellee.

Nathaniel L. Goldstein, Atty. Gen. (Orrin G. Judd, Sol. Gen., of New York City, Wendell P. Brown, First Asst. Atty. Gen., and Henry S. Manley, Asst. Atty. Gen., of counsel), for defendant-appellant.

Denis J. Harrington, of Saratoga Springs, N. Y. (John A. Slade, of Saratoga Springs, N. Y., of counsel), for Saratoga Springs Commission and Saratoga Springs Authority.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This appeal is from a judgment for the plaintiff entered in the District Court for the Northern District of New York in a suit by the United States to recover taxes, with interest thereon, levied against the three defendants under § 615(a) (5) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 614, on sales of bottled mineral and table waters taken from the springs at the State Reservation in Saratoga, N. Y. The defense was that the Saratoga Springs Authority is immune from such taxation as an agency of the state of New York engaged in the performance of a governmental function of a non-taxable character.

The facts which were stipulated may be summarized as follows: From colonial times the waters found at Saratoga Springs have been recognized to possess marked medicinal value by virtue of the presence of various minerals, and they have been extensively used for drinking and bathing purposes. The springs were exploited by private enterprise until 1912, but unwise operation was taking its toll by lowering the water level to an alarming extent and in that year the state stepped in to prevent that. To preserve and to restore them to their former flow, the state acquired title to all the land on which the springs were located, and took immediate measures to return the subterranean water level to a height from which it had been lowered by the drilling of new wells while the business was privately conducted.

In 1916 the State Department of Conservation was given custody of the lands, but in 1930 control was put in a newly-created Saratoga Springs Commission, a public commission of the State of New York and one of the defendants in this case. In 1933 the Saratoga Springs Authority, a public benefit corporation of the State of New York, took over the management and control of the premises by lease from the Commission. Large sums have been spent upon the improvement and maintenance of the springs, which are operated and made available to the people of New York and others for the purpose of spreading widely the healthful benefits to be derived from the use of such waters.

To that end the Authority maintains on the premises a variety of establishments for the better utilization of the natural resources found in the springs. There are bath houses, tennis courts, drink halls, and a recreational center. Bus service is provided, and there is a hotel sanitarium operated by others under lease from the Authority.

The sale of bottled waters is promoted by extensive and costly advertising, and in recent years this enterprise has always yielded a substantial profit, with the exception of one year when a loss was sustained. The profits realized are applied to the expenses of maintaining the Reservation, which is not self-supporting and requires for its continued existence the aid of a large annual appropriation from the state legislature to pay the current deficits and to meet the interest and principal payments upon outstanding indebtedness.

The contention of the defendants is that the nature of this enterprise indicates that its operation is a governmental function of the State of New York immune from taxation.

The levy which is the subject of this litigation is a tax of two cents per gallon laid upon the sale of bottled waters sold at more than 12½ cents per gallon. The district court held that the sales were not made in performing a non-taxable governmental function, and entered judgment for the United States. 48 F.Supp. 15.

■ The Supreme Court held in Collector v. Day, 11 Wall. 113, 20 L.Ed. 122, that state governments were entitled to immunity by constitutional implication from taxation by the nation of the exercise of functions which were essential to their existence as they were constituted when the Constitution was adopted and on the premise that salaries are exempt when paid by a state to its officers who perform functions which are themselves immune from federal taxation invalidated a tax upon the salary of a state probate judge. But this case has recently been disapproved if not altogether overruled. Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466. And it is clear that where a state engages in business in competition with private enterprise it enjoys no special privilege so far as immunity from federal taxation is concerned. South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.

Ed. 261, 4 Ann.Cas. 737. But exactly where the line is to be drawn remains a problem by no means easy to solve and a variety of tests have been proposed from time to time.

In the South Carolina case, supra, the Supreme Court decided that immunity attached to activities of a strictly governmental character. In Flint v. Stone Tracy Co., 220 U.S. 107, 172, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, the line was drawn at essential governmental functions. Helvering v. Powers, 293 U.S. 214, 225, 55 S.Ct. 171, 79 L.Ed. 291, spoke of usual governmental functions. The touchstone was held to be traditional activities in United States v. California, 297 U.S. 175, 185, 56 S.Ct. 421, 80 L.Ed. 567. And in Allen v. Regents of University System of Georgia, 304 U.S. 439, 451, 58 S.Ct. 980, 82 L.Ed. 1448, the court said it was a question whether the activity corresponded in all its essentials to a business usually carried on by private enterprise.

■ It will be noted that all those tests are more or less similar, yet they are not different ways of expressing quite the same idea. We think the fundamental consideration must be that exemption from federal taxation in a particular case flows from the necessity to protect the continued existence of a state. Cf. Helvering v. Gerhardt, 304 U.S. 405, 421, 58 S.Ct. 969, 82 L.Ed. 1427. The need of the state activity to maintain the states as they exist in our system of dual sovereignty will loom as the paramount issue, and whether any activity is described as essential or usual or traditional or something else will not weigh very heavily except as it bears upon that.

■ Turning now to the precise question here presented we are unable to distinguish as a permissible subject of federal taxation the business of a state engaged in bottling and selling water, a common private enterprise, from the business of a state engaged in selling some other potable like intoxicating liquor, also a common private enterprise. As the last mentioned activity is undoubtedly taxable by the federal government, South Carolina v. United States, supra; Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307, so is the first. Much is made by defendants of the great value to public health, which is afforded by the springs, and we heartily agree that the enterprise is an extremely worthy one which benefits in great measure the people of New York as well as those from other states who visit the reservation. But it is not the maintenance of the health resort which is taxed. Nor does it seem possible to make a sound distinction between this case and those just cited on the ground that this water so bottled and sold is from a surplus resulting from the conservation and maintenance of a natural resource. It cannot be denied that it is the limitation of the amount of water taken from the springs which preserves them for present and future use; not whether water withdrawn is bottled in part and sold. Equally immaterial to the same subject is whether the bottling and selling, if done, is done by a state agency or privately as formerly. Except for the profit the state derives from the business, all that it accomplishes in the conservation of a natural resource and in making the spring water available to the public could be done without making any charge for bottled water. When it engages in selling the bottled water the Saratoga Springs Authority is engaged in business for profit in competition with others in like business and subject to like federal taxation.

■ It is argued that Mayo v. United States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504, is contrary but we can perceive no conflict with the principles here given effect. In the Mayo case the issue was whether a Florida statute imposing an inspection fee designed to maintain the desired quality of fertilizer used on land in that state could be enforced in respect to shipments of fertilizer into Florida to be distributed under the supervision of the Secretary of Agriculture in carrying out the provisions of the Soil Conservation and Domestic Allotment Act, 49 Stat. 163, 1148; 50 Stat. 329; 55 Stat. 257, 860; 56 Stat. 761, 16 U.S.C.A. § 590a et seq. It was held that, as in so doing the United States was carrying out a governmental function upon which the inspection fee was a direct burden, it was a tax which could not be laid by a state in the absence of consent by Congress, a quite different issue from that presented here. For any lawful function of the federal government in the performance of which the United States acts directly is

constitutionally immune from state taxation, unless Congress consents, whereas only a limited class of state activities are constitutionally immune from federal taxation.

Judgment affirmed.