

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
ATTORNEY GENERAL

Honorable Frank D. Quinn
Executive Secretary
Texas State Parks Board
Austin, Texas

Dear Sir:

Opinion No. 0-5840
Re: Is Section 1700 (e), Title 26, Internal Revenue Code, U.S., which taxes cabarets, roof gardens, etc., applicable to Tyler State Park concessions?

We have your letter in regard to the above matter, the more pertinent portions of which are as follows:

"The Internal Revenue Service of the Treasury Department has made an assessment, copy attached hereto, against Tyler State Park and/or Mike Matise-Concessionaire, 911 Lawrence, Tyler, Texas, in the principal amount of $289.68 based on Section 1700 (e), Title 26, of the Internal Revenue Code -- said sub-section also known as tax on Cabarets, roof gardens, etc.

"We respectfully request your assistance in defending and defeating this claim against the Texas State Parks Board and/or Mike Matise for said tax.

"If the Government's claim against the Texas State Parks Board is made to stand up, all of our parks will likewise be liable and our Special Park Fund will suffer a loss of several thousand dollars. Please refer to:

"House Bill Number 686, Chapter 431, of the General Laws of the 47th Legislature, Regular Session which reads as follows:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

189

"'Section 1. The State Parks Board is hereby authorized to operate or grant concessions in State Parks and to operate concessions or make concession contracts for any causeway, beach drive, or other improvements in connection with State Park sites wherever feasible. The revenue thus earned by the State Parks Board shall, when collected, be placed in the State Treasury. The Board may make such rules and regulations for the carrying out of this Act and the laws of this State relative to State Parks, as it may deem necessary not in conflict with law.'

"The fact situation is this: The concession building of Tyler State Parks has a large room in which are located tables and chairs for the convenience of the public in resting, eating and drinking - soft drinks only, a place on the outside for dancing, although at times there is some dancing inside, and in which food and soft drinks are sold. Also located in this room is an electric music-box machine. Those desiring music must insert the necessary coins in the music machine. Tyler State Park Concessions does not own the music machine, but receives a percentage of the receipts.

"Mr. Mike Matise is now and has been for more than four years employed by the Texas State Parks Board as manager of Tyler State Park and operates the Texas State Park Concessions for the Board. Mr. Matise receives a small (15-20%) percentage of the net profit earned by Tyler State Park Concessions.

"Tyler State Park Concessions is the name given to the agency operating the concessions at Tyler State Park as a matter of convenience to the Board. Tyler State Park Concessions is a part of the Texas State Parks Board.

"Our next contention is that under the wording of the cabaret tax law, the fact situation existing in the concession building of Tyler State Park does not constitute a cabaret, roof garden, etc., and that therefore, no tax should have been

Honorable Frank D. Quinn, page 3

assessed. In this connection may we cite the cases of U. S. v. Broadmoor Hotel Co., 30 Fed. Rep. (2d), 440, 441, and Deshler Hotel Co. v. Busey, 36 Fed. Supp. 392, which, although basing their holding on earlier amendments of the law, nevertheless are helpful in construing wording used in the present tax law.

"Even should it be decided that the fact situation existing in the concession building of Tyler State Park does come within the meaning of the cabaret tax law, we still contend that the Texas State Parks Board is not liable for the assessment. Although the Federal Government has assessed State Agencies for various taxes, this was based on a proprietary activity of the State as distinguished from a governmental function. In this connection, may we cite the case of State v. Brannum, 111 S. W. (2d) 347, in regard to the function of the operation of a State Park.

"We are herewith submitting certain evidence to support our contention that Mr. Mike Matise is an employee of the Texas State Parks Board, and, therefore, not personally liable for the payment of the cabaret tax. Enclosed is a contract, a bond, and an oath of office, covering Mr. Matise as caretaker and park manager of Tyler State Park and Tyler State Park Concessions."

We have very carefully considered your letter, together with the pertinent papers which you sent us in connection with same.

We have also read the authorities cited by you, as well as others.

It is our judgment that the assessment made by the Collector of Internal Revenue of the United States, and of which you complain, is lawful and that no successful defense could be made thereto in the courts.

Title 26, Section 1700 (e) of the United States Code

"There shall be levied, assessed, collected
and paid - a tax of one and one-half cents for each
ten cents or fraction thereof of the amount paid
for admission to any public performance for profit
at any roof garden, cabaret, or other similar en-
tertainment, to which the charge is wholly or in
part included in the price paid for refreshment,
service, or merchandise; the amount paid for such
admission to be deemed to be twenty per centum of
the amount paid for refreshment, service, and mer-
chandise. Where the amount paid for admission
is fifty cents or less, no tax shall be imposed."

The cases cited by you were interpretations of the
law above quoted. They pointed out that mere service of food
in the manner and with the accessories customary and expected
by the patrons of hotels of the character there involved did
not constitute an entertainment within the contemplation of
law. The amendments to said section are responsive to these
decisions, and that section now reads:

"There shall be levied, assessed, collect-
ed, and paid - a tax equivalent to five per centum
of all amounts paid for admission, refreshment,
service, or merchandise, at any roof garden, cab-
aret, or other similar place furnishing a public
performance for profit, by or for any patron or
guest who is entitled to be present during any
portion of such performance. The term 'roof
garden, cabaret or other similar place' shall
include any room in any hotel, restaurant, hall,
or other public place where music and dancing
privileges or any other entertainment, except in-
strumental or mechanical music alone, are afford-
ed the patrons in connection with the serving or
selling of food, refreshment, or merchandise. A
performance shall be regarded as being furnished
for profit for purposes of this section even
though the charge made for admission, refresh-
ment, service, or merchandise is not increased
by reason of the furnishing of such performance.
. . . (2) The tax imposed . . . shall be return-
ed and paid by the person receiving such payments."
(Emphasis added)

The operation described by you appears to come squarely within the scope of this section.

Further, we are of the opinion that the exemption from National taxation, which ordinarily attaches to State agencies and instrumentalities, would afford no defense under the facts outlined in your letter. As said by the United States Supreme Court, in South Carolina v. U.S., 199 U.S. 437, at 461:

"The exemption of state agencies and instrumentalities from National taxation is limited to those which are of a strictly governmental character, and does not extend to those which are used by the State in the carrying on of an ordinary private business.

". . . .

"Whenever a State engages in a business which is of a private nature that business is not withdrawn from the taxing power of the Nation."

Note also this language, in Helvering v. Powers, 293 U.S. 214, at 227:

". . . the State, with its own conception of public advantage, is undertaking a business enterprise of a sort that is normally within the reach of the federal taxing power and is distinct from the usual governmental functions that are immune from federal taxation in order to safeguard the necessary independence of the State."

Similar holdings are: Helvering v. Pherrell, 303 U.S. 218; Allen v. Regents, 304 U.S. 439.

We therefore respectfully advise that the tax inquired about by you should be paid.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Arthur L. Moller_
Arthur L. Moller
Assistant

ALM:db

APPROVED
OPINION COMMITTEE
BY _BWB_
CHAIRMAN