**Stuart E. HIRSCH**

v.

**Samuel A. GREEN, Jr., State's Attorney for Baltimore County, et al.**

**Civ. A. No. 73-857-N.**

United States District Court, D. Maryland.

Sept. 20, 1974.

Roland Walker, Baltimore, Md., for plaintiff.

Patrick A. O'Doherty, Baltimore, Md., for defendant Samuel A. Green, Jr., (former) State's Atty. for Baltimore County.

Francis B. Burch, Atty. Gen. of Md., Clarence W. Sharp and Gary Melick, Asst. Attys. Gen., for defendant William E. Brannan, State's Atty. for Baltimore County.

R. Bruce Alderman, County Sol., Baltimore County, and Harry S. Shapiro and Julius W. Lichter, Asst. County Sols., for defendant William F. Laudeman, Acting Finance Officer for Baltimore County.

NORTHROP, Chief Judge.

Plaintiff, Stuart E. Hirsch, the former Deputy State's Attorney for Baltimore County, seeks injunctive and declaratory relief and damages for his allegedly improper dismissal. The case is before the Court on separate motions to dismiss by both substituted defendants, William E. Brannan, State's Attorney for Baltimore County, and William F. Laudeman, Acting Finance Officer for Baltimore County. A motion has also been filed to drop defendant William E. Brannan as a misjoined party.

Plaintiff predicates jurisdiction of his action upon Title 42, U.S.C. § 1983, Title 28, U.S.C. § 1343(3) and (4) and the first and fourteenth amendments to the United States Constitution.

The allegations which form the basis of plaintiff's complaint are set forth in this Court's previous decision regarding the motion for summary judgment of defendant Samuel A. Green, Jr., Hirsch v. Green, 368 F.Supp. 1061 (D.Md.1973). In that opinion, this Court held that plaintiff, who served at the will and pleasure of the elected State's Attorney, did not have a vested property right in his job, and summary judgment for defendant was granted regarding plaintiff's property claim. Defendant Green's motion for summary judgment as to first amendment issues and claim of deprivation of liberty was denied.

Subsequent to this Court's prior decision, defendant Green resigned his position as State's Attorney for Baltimore County, and original defendant Walter Richardson left his job as Finance Officer for Baltimore County. These positions were subsequently filled by the ap-

pointments of William E. Brannan and William F. Laudeman, respectively. On July 2, 1974, plaintiff filed a motion requesting this Court to allow the substitution of William E. Brannan and William F. Laudeman for Samuel Green and Walter Richardson in their respective official capacities.

## I.

This case is clearly governed by Rule 25(d), Fed.R.Civ.P. and the recent Supreme Court opinion, Spomer v. Littleton, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed. 2d 694 (1974), construing Rule 25(d). While plaintiff's motion of July 2, 1974, to amend his complaint to allow substitution of Brannan and Laudeman as defendants cites Rule 15, Fed.R.Civ.P. as authority, the language of the motion and the prayer reveal that plaintiff's actual request was for substitution of a successor public officer under Rule 25(d), Fed.R.Civ.P. On July 12, 1974, plaintiff's motion was granted by this Court. Rule 25(d)(1), Fed.R.Civ.P., provides as follows:

When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

Rule 15(a), Fed.R.Civ.P. refers, in general terms, to the broad subject of changes in the pleadings by amendment, including the addition or deletion of some of the parties. Rule 25(d) refers, in very specific terms, to the substitution of a successor public officer for his predecessor in situations, as in the instant case, where the predecessor "dies, resigns, or otherwise ceases to hold of-

fice" during the pendency of an action filed against him. To the best knowledge of this Court, any conflict or ambiguity which results from a comparison of these two Rules presents a novel question which must be resolved by analogy. In Pacific Gas and Electric Co. v. Fibreboard Products, Inc., 116 F.Supp. 377, 382 (N.D.Cal.1953), the district court set forth the controlling principle for such resolutions:

Rule 15(a), F.R.C.P., refers, in general terms, to the broad subject of changes in the pleadings, by amendment. Rule 21, F.R.C.P., refers, in specific terms, to changes in the parties to the action, by adding or dropping some of such parties. Any conflict or ambiguity which results from a comparison of the two rules must be resolved in favor of the specific and against the general. Thus, when a proposed amendment to a complaint seeks to effect a change in the parties to the action, Rule 21, F.R.C.P., controls and, to that extent, limits Rule 15(a), F.R.C.P.

The distinction set out in *Fibreboard, supra,* between the specific and the general Federal Rule of Civil Procedure has been cited as controlling in subsequent cases where two separate Rules could govern the same issue. International Brotherhood of Teamsters, etc. v. American Federation of Labor, 32 F.R.D. 441 (E.D.Mich.1963); Gordon v. Lipoff, 320 F.Supp. 905 (W.D.Mo.1970). On the theory of these cases and the sound principle that the specific rule should control over the general, this Court holds that plaintiff's amended complaint substituting defendants Brannan and Laudeman for Green and Richardson, respectively, must be governed by Rule 25(d), FedR.Civ.P., rather than by Rule 15(a), Fed.R.Civ.P.

## II.

In 1961, Rule 25, Fed.R.Civ.P., was amended to provide for the automatic substitution of parties. The Notes of the Advisory Committee on Rules, fol-

lowing Rule 25, 28 U.S.C., contain the following statement:

> Where the successor does not intend to pursue the policy of his predecessor which gave rise to the lawsuit, it will be open to him, after substitution, as plaintiff to seek voluntary dismissal of the action, or as defendant to seek to have the action dismissed as moot or to take other appropriate steps to avert a judgment or decree. Contrast Ex parte La Prade, supra [289 U.S. 444, 53 S.Ct. 682, 77 L.Ed. 1311]; Allen v. Regents of the University System, 304 U.S. 439 [58 S.Ct. 980, 82 L.Ed. 1448] (1938); McGrath v. National Assn. of Mfgrs., 344 U.S. 804 [73 S.Ct. 31, 97 L.Ed. 627] (1952); Danenberg v. Cohen, 213 F.2d 944 (7th Cir. 1954).

The motions to dismiss filed by defendants Brannan and Laudeman fall within the scope of the above language. Professor Charles Alan Wright, in discussing the amended Rule 25, emphasized that the burden of showing whether there is a substantial need for continuing the action against the successor public officer will be on the plaintiff if a state officer is involved:

> Where the suit is against a state officer, however, the mere fact that the rule purports to authorize substitution does not make such substitution proper. any more than did the statute in force when Ex parte La Prade was decided. Substitution will still be within the letter of the rule, and will avoid much waste motion in the judicial process, but here *it would seem that the action must be dismissed as moot unless the plaintiff makes the needed showing that the officer threatens to continue the policy of his predecessor.* In summary, the rule should be held applicable and to permit automatic substitution both of federal and state officers, but *the burden of showing whether there is a substantial need for continuing the action, if challenged by an assertion that the suit is moot, will be on the plaintiff if a*

*state officer is involved,* though on the officer where he is connected with the federal government. [2 Baron & Holtzoff, Fed.Practice and Procedure, § 626 (Wright Ed. 1961) 448–449]. (Emphasis added; Footnote omitted).

The Supreme Court, in the recent case of Spomer v. Littleton, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974) [hereinafter, *Spomer*] has discussed the criteria which will control the efficacy of plaintiff's ongoing action against substituted defendants Brannan and Laudeman. In that case, plaintiff's complaint, filed against Peyton Berbling individually and in his capacity as State's Attorney for Alexander County, Illinois, alleged a broad range of racially discriminatory practices in the administration of the criminal justice system in Alexander County. When W. C. Spomer was elected to succeed Berbling as State's Attorney for Alexander County, Spomer became a substituted defendant in Berbling's place by operation of Rule 25(d), Fed.R.Civ.P. (same as Supreme Court Rule 48(3)).

The Supreme Court remanded the case to the Court of Appeals for a determination of whether the former dispute, regarding the availability of injunctive relief against State's Attorney Berbling, had become moot as a result of Berbling's replacement by Spomer. The Supreme Court emphasized that an ongoing controversy may no longer exist where plaintiff made no allegations that Spomer intended to continue the alleged practices of Berbling:

> It has become apparent, however, that there is nothing in the record upon which we may firmly base a conclusion that a concrete controversy between W. C. Spomer and the respondents is presented to this Court for resolution. No allegations in the complaint cited any conduct of W. C. Spomer as the basis for equitable or any other relief. . . . The wrongful conduct charged in the complaint is personal to Berbling, despite the fact that he was also sued in his

then capacity as State's Attorney.[9] No charge is made in the complaint that the policy of the office of State's Attorney is to follow the intentional practices alleged . . . . [*Spomer, supra,* 414 U.S. at 520, 94 S.Ct. at 689].

■ The above language clearly indicates, contrary to plaintiff Hirsch's argument in the instant case, that there is no automatic privity of liability between former State's Attorney Green and State's Attorney Brannan. *Allen v. Regents of University System,* 304 U.S. 439, 444, 58 S.Ct. 980, 982, 82 L.Ed. 1448 (1938). Rather, any such continuity of claim against Brannan as successor State's Attorney must rest on the continuation by Brannan of the wrongful practices alleged against his predecessor Green.

In footnote 9 of the *Spomer* opinion, the Court sets forth the guideline to be applied under Rule 25(d) where a substituted public officer seeks dismissal of the action against him on the grounds of mootness:

9. . . . The history and application of former and present Rule 25(d) are sketched in 3B Moore's Federal Practice ¶ 25.09 [1]–[3] (2d ed. 1969). Of particular relevance is the Advisory Committee Note on the 1961 "automatic substitution" amendment to Rule 25(d) which suggests that "[i]n general it will apply whenever *effective* relief would call for corrective behavior by the one then having official status and power, rather than one who has lost that status and power through ceasing to hold office." See *id.,* at 25–403, 25–404. *The question of whether corrective behavior is thought to be necessary is, of course, dependent on whether the dispute with the predecessor continues with the successor.* (Emphasis added.) [*Spomer, supra,* 414 U.S. at 521, 94 S.Ct. at 689].

In the instant case, this Court holds that effective relief for plaintiff does not call for corrective behavior by State's Attorney Brannan. Footnote 9 of the Supreme Court opinion in *Spomer* requires this conclusion. "Effective relief" for plaintiff under Rule 25(d), as that phrase is used in the Advisory Committee Note and as construed by the Supreme Court, depends "on whether the dispute with the predecessor continues with the successor." *Spomer, supra,* 414 U.S. at 521, 94 S.Ct. at 689. The Supreme Court opinion in *Spomer* makes clear that plaintiff's right to "effective relief" against Brannan as successor State's Attorney is not a function of the constitutional deprivations, if any, which he may have suffered while serving under former State's Attorney Green, unless these same deprivations continue under Brannan's office.

### III.

■ Under the guideline set forth in *Spomer,* this Court finds that neither plaintiff's first amendment claim nor his dispute regarding deprivation of liberty continue against State's Attorney Brannan. Looking first at plaintiff's first amendment claim, no allegations have been made that defendant Brannan has improperly deprived Hirsch of employment as a result of Hirsch's grand jury testimony or any other free speech right exercised by Hirsch. Nothing in the record indicates that Hirsch has even applied to Brannan for reappointment. When Brannan took over as State's Attorney for Baltimore County, he had complete discretion regarding the appointment of his two Deputy State's Attorneys. Md.Ann.Code art. 10, § 40(d) (Supp.1973). Thus, as to plaintiff's first amendment claim, plaintiff cannot validly argue that his "dispute with the predecessor [Green] continues with the successor [Brannan]," within the meaning of the Supreme Court's guideline for such cases. *Spomer, supra,* 414 U.S. at 521, 94 S.Ct. at 689 n. 9.

■ With regard to plaintiff's claim that he suffered a deprivation of liberty in that his reputation has been substantially and irreparably damaged as a result of his dismissal, this Court holds

that such dispute is limited to former State's Attorney Green and does not continue with Green's successor. In Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court discussed extensively a plaintiff's right to notice and hearing where his "good name, reputation, honor, or, or integrity is at stake because of what the government is doing to him . . . ." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970). At footnote 12 of *Roth, supra,* the Supreme Court stated:

> 12. The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons.

Whatever may be Hirsch's right to have his reputation cleared through a hearing on his § 1983 civil rights action against Green personally, such right cannot be extended to a claim for reinstatement as Deputy State's Attorney under Brannan's office. The *Roth* opinion makes clear that where plaintiff's reputation has, allegedly, been improperly maligned, the purpose of granting Hirsch a hearing on his liberty claim would be restricted to providing plaintiff an opportunity to clear his name. Having taken no part in the events which form the basis of plaintiff's complaint, defendants Brannan and Laudeman cannot conceivably be necessary parties in effecting this purpose. In the opinion of this Court, plaintiff's claim to have suffered a deprivation of liberty during Green's term of office as State's Attorney for Baltimore County is a dispute which does not continue with Green's successor. *Spomer, supra,* 414 U.S. at 521, 94 S.Ct. at 689 n. 9.

▇▇▇▇ The guideline set forth in *Spomer,* and this Court's decision in the instant case to dismiss substituted defendants Brannan and Laudeman are entirely consistent with well-established principles regarding the propriety of an injunction. "[A] suit for an injunction deals primarily, not with past violations, but with threatened future ones; . . . ." Swift & Co. v. United States, 276 U.S. 311, 326, 48 S.Ct. 311, 315, 72 L.Ed. 587 (1928). "The necessary determination [regarding the propriety of an injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). "When the parties discontinue the acts of which complaint is made, the questions become moot and injunctive relief should not then be granted." First National Bank in Billings v. First Bank Stock Corp., 197 F.Supp. 417, 428 (D.Mont.1961); Securities and Exchange Commission v. Culpepper, 270 F.2d 241 (2d Cir. 1959). On the authority of these cases, the alleged wrongdoing of Brannan's predecessor will not be visited upon Brannan through an injunctive order from this Court.

In opposition to defendants' motions to dismiss, plaintiff relies on the recent case of Jain v. Kurland, decided by Judge Thomsen of this Court, Civil No. T–74–654 (D.Md., filed July 5, 1974 [hereinafter, *Jain*]). In that case, plaintiffs, employees at the Maryland Psychiatric Research Center, were discharged upon a determination that they were not performing their duties in a satisfactory manner. Judge Thomsen ordered a post-termination administrative hearing to determine whether the respective discharges of plaintiffs were justified or unjustified. On appeal, Judge Winter modified Judge Thomsen's preliminary injunction by ordering the reinstatement of plaintiffs with pay pending the outcome of the hearing.

Plaintiff's reliance on *Jain* is ill-founded. The present case is distinguishable from *Jain* on at least three grounds, not to mention the intervention by Governor Mandel on behalf of the plaintiff employees at the Psychiatric Research Center.

First, plaintiffs in the *Jain* case were relying on the alleged deprivation of their property rights as well as on the deprivation of liberty rights (see p. 2 of Judge Thomsen's opinion). No such property right can be relied upon by Hirsch in the instant case. In this Court's previous opinion, Hirsch v. Green, 368 F.Supp. 1061 (D.Md.1973), it was made clear that Hirsch has no valid property claim against any of the defendants and his complaint was dismissed as to this ground.

Second, *Jain* is distinguishable because defendants in that case stipulated that ". . . if an administrative tribunal should hold that any of the plaintiffs were improperly discharged, they will be reinstated and given back pay" (see p. 7 of Judge Thomsen's opinion). No such stipulations have been made in the present case. Nor could defendants in the present case make such a stipulation in view of the fact that Md.Ann.Code art. 10, § 40(d) (Supp. 1973) limits the number of Deputy State's Attorneys to two, and both of these appointments have already been made.

Third, the present case is entirely distinguishable from *Jain* in that substitution of a successor state official was never an issue in the latter case. In *Jain*, the injunction reinstating plaintiffs to their positions was issued against the same defendants who were responsible for the allegedly improper dismissal. The mootness problem discussed in *Spomer*, and held to be controlling in the instant case, was never presented in *Jain*.

In view of the fact that an injunctive order from this Court reinstating Hirsch as Deputy State's Attorney would be inappropriate under either plaintiff's first amendment claim or under his deprivation of liberty claim, this Court grants the pending motions of William E. Brannan and William F. Laudeman, and orders that plaintiff's complaint be dismissed as to these defendants.