**Darrell D. KINCAID, Plaintiff-Appellant,**

v.

**John RUSK, individually and as Sheriff of Tippecanoe County of Lafayette, Indiana and Edgar B. Harger, Sheriff of Tippecanoe County, Defendants-Appellees.**

No. 78–1822.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1981.
Decided Feb. 10, 1982.

---

Joseph S. Van Bokkelen, Highland, Ind., for plaintiff-appellant.

J. Frederick Hoffman, LaFayette, Ind., for defendants-appellees.

Before PELL, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

Appellant Darrell Kincaid seeks declaratory relief and compensatory damages pursuant to 42 U.S.C. § 1983 (1976), for numerous alleged violations of his constitutional rights while he was a pretrial detainee in the custody of appellee Sheriff John Rusk. Kincaid contends, *inter alia*, that several procedural errors occurred in the course of discovery, that the wrong standards were applied as to certain of the alleged constitutional violations, and that there was an incorrect analysis of Sheriff Rusk's claimed immunity. We affirm the judgment of the district court denying Kincaid's various constitutional claims except with respect to certain claims under the first and fourteenth amendments. As to these latter claims, we reverse the district court's judgment because we find that Kincaid's rights were violated by Sheriff Rusk in enforcing an official policy which arbitrarily barred access by pretrial detainees to reading material other than softbound (paperback) books and magazines. We also reverse with respect to the finding of qualified immunity for Sheriff Rusk in his denial of access to reading material. We award Kincaid nominal damages of one dollar.

I. Mootness

Kincaid was confined to the Tippecanoe County, Indiana, jail while awaiting trial on a murder charge from April 2, 1975, to July 3, 1975. On July 3, 1975, Kincaid was convicted of first degree murder and continued to be held in the jail until July 11, 1975. He was then transferred to an Indiana penitentiary. Sheriff John Rusk exercised authority and control over the jail during Kincaid's confinement as a pretrial detainee.

Kincaid filed an amended *pro se* complaint on April 26, 1977, alleging that Rusk, in both his individual and official capacities, violated Kincaid's first, fourth, fifth, eighth, ninth and fourteenth amendment rights during Kincaid's confinement as a pretrial detainee. The complaint sought $25,000 in compensatory damages, declaratory relief and attorney's fees. After dismissing the claim against Rusk in his individual capacity, the district court appointed counsel to represent Kincaid in a trial of the claims against Rusk in his official capacity as sheriff. Judgment for Rusk on all claims was entered after a bench trial on June 1, 1978. Kincaid thereafter timely filed this appeal *pro se*, and counsel was again appointed.

After the district court's entry of judgment but before argument in this court, one of the parties notified this court that John Rusk had died on December 24, 1979. On its own motion, the court ordered that Rusk's successor in office, Sheriff Edgar B. Harger, be added as an additional defendant. Although the question had not been briefed by the parties, the court at oral argument raised the question whether Sheriff Rusk's intervening death had mooted the appeal. In a supplemental brief filed pursuant to the court's direction, appellee Harger now urges this court to dismiss Kincaid's appeal as moot arguing, *inter alia*, that Tippecanoe County has no obligation to pay any damages which might be assessed and that Rusk's successor in office cannot be held liable for Rusk's constitutional torts. We find the mootness argument persuasive only as to Kincaid's claim for declaratory relief.

■ Federal Rule of Appellate Procedure 43(c)(1) provides:

When a public officer is a party to an appeal or other proceeding in the court of appeals in his official capacity and during its pendency dies, resigns or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party .... [1]

This rule contemplates the automatic substitution of successors to public officers

---

1. The Notes of the Advisory Committee on Appellate Rules state that Rule 43(c) is derived from Fed.R.Civil Pro. 25(d).

sued in their *official capacity.*[2] *Cf. Bracco v. Lackner*, 462 F.Supp. 436, 441 n.2 (N.D. Cal.1978) (successor of state officer sued in official capacity automatically substituted under Fed.R.Civil Pro. 25(d)). *See also United States v. Mississippi*, 339 F.2d 679 (5th Cir. 1964). Thus, to the extent that Kincaid's suit sought relief from Sheriff Rusk in his official capacity, the court's order substituting Sheriff Harger as defendant was proper.[3]

Although substitution may be proper under Fed.R.App.Pro. 43(c), appellees correctly point out that substitution is merely a procedural device that does not govern the question of mootness. *See* 7A *C. Wright & A. Miller, Fed.Prac. & Pro.* § 1960, at 682–83 (1972). *See generally Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners*, 622 F.2d 807, 820–22 & n.26 (5th Cir. 1980). Appellees incorrectly argue, however, that because any constitutional deprivations occurred in 1975 before Sheriff Harger assumed office, and since it is unlikely Kincaid will ever return to the jail as a pretrial detainee, there is no justiciable controversy between Kincaid and Sheriff Harger. This contention is inadequate because mootness in this official-capacity suit turns upon the type of relief sought by the complainant.

■ A demand for *present or prospective* (declaratory or injunctive) relief imposes a substantial burden on the plaintiff to show survival of the controversy. Thus, when a public official is sued in his official capacity and the official is replaced or succeeded in office during the pendency of the litigation, the burden is on the complainant to establish the need for declaratory or injunctive relief by demonstrating that the successor in office will continue the relevant policies of his predecessor. *See Spomer v. Littleton*, 414 U.S. 514, 520–23, 94 S.Ct. 685, 688–90, 38 L.Ed.2d 694 (1974).[4] On the other hand, the substitution of public officers in an official-capacity suit seeking *compensatory damages* does not require the complainant to demonstrate either that the successor will continue his predecessor's policies or that the controversy is capable of repetition yet evading review because the suit is based on alleged *past* misconduct. *Cf. Wycoff v. Brewer*, 572 F.2d 1260 (8th Cir. 1978) (prisoner's claim for injunctive relief mooted by his transfer but action for damages not so mooted).

■ But an official-capacity suit for damages against the successor in office to a public official also involves the difficult question of personal as against governmental liability. Since the successor official is not personally or vicariously liable for the torts of his predecessor, the question remains whether the successor may properly be named as a defendant in a damage action for torts unrelated to him or his administration. The Supreme Court has apparently answered this question in *Monell v. Department of Social Services*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 2035 n.55, 56 L.Ed.2d 611 (1978), where the Court noted that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." Thus, an official-capacity suit directed at a named public officer seeking damages for alleged past misconduct is not mooted when the named officer dies or is succeeded in office because the purpose and

---

2. Substitution of parties in suits naming public officers in their *individual* or *personal* capacity is governed by Fed.R.App.Pro. 43(a).

3. Kincaid also asserts a claim against Rusk in his individual capacity. We need not reach the question whether this court, under Fed.R.App. Pro. 43(a), could have substituted Sheriff Harger or any other person as a defendant with respect to Kincaid's claim against Rusk in his individual capacity since we affirm the district court's order of September 28, 1977, dismissing the suit against Rusk as an individual.

4. Of course, mootness is not determined *solely* by the type of relief sought. The court must examine the underlying nature of the claim in light of the specific type of relief sought. *Cf. Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980) (prisoner's claim for injunctive relief against use of alleged impermissible parole criteria mooted when prisoner received conditional parole; however, claims for declaratory relief and damages arising from same allegation not mooted when use of criteria might affect prisoner's access to work release program).

effect of such a suit is to recover damages only from the *public entity* for the actions of its agents.[5] Neither the predecessor official nor the successor can become personally liable (nor a judgment collected from them) if suit is brought against them respectively in their official capacities.

Application of these principles suggests that this appeal is not moot. Kincaid's numerous claims involve, for the most part, challenges to official policies and procedures enforced by Sheriff Rusk during Kincaid's confinement as a pretrial detainee.[6] If Tippecanoe County could have been named as a defendant, then the substitution of Harger for Rusk is equally appropriate. The action against Rusk, in his official capacity, which is effectively against the county, survives because the county survives. Thus the suit for damages against Rusk in his official capacity is not moot

since Sheriff Harger has been substituted as a nominal defendant in order to pursue damages to judgment collectible from the County.[7]

On the other hand, Kincaid's claim for declaratory relief is moot. Kincaid has not demonstrated that Sheriff Harger continued to enforce any of the policies or procedures attributed to Sheriff Rusk. Indeed, appellee asserts that Sheriff Harger has rescinded several of the more offensive policies of his predecessor having to do with prisoner access to reading material, television and radio. Kincaid has not challenged these assertions. We therefore conclude that Kincaid's damage action is not moot and that Sheriff Harger is properly substituted as a defendant in this official-capacity suit although he can incur no personal liability as a result of any judgment entered.

5. *Hirsch v. Green*, 382 F.Supp. 187 (D.Md. 1974), is not controlling. In *Hirsch*, a former deputy state's attorney sued the state's attorney and county finance officer alleging that he was improperly dismissed from his position in violation of the first amendment. The suit was brought under 42 U.S.C. § 1983 (1976), seeking damages and declaratory relief. During the litigation, defendants were succeeded in office by two individuals unconnected with the events underlying plaintiff's claim. Plaintiff subsequently substituted the successors as defendants in the action, and defendants moved to dismiss. The court held that substitution was not proper in this case under *Spomer v. Littleton*, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974) because there was no evidence that either substituted defendant had or would infringe the plaintiff's free speech rights. The court failed to distinguish, however, between the injunctive relief sought in *Spomer* and the relief sought in the case before it, which was limited to declaratory relief and damages. More significantly, the *Hirsch* case was decided before *Monell*, which held that municipalities were "persons" suable under section 1983 (and, concomitantly, that an official-capacity suit was only another mechanism for, in effect, bringing a suit against a government entity). In both *Hirsch* and *Spomer*, the alleged wrongful conduct was personal to the defendant originally named. *See Spomer*, 414 U.S. at 521, 94 S.Ct. at 689. Because the alleged misconduct was personal and the governmental entities involved in those cases could not, at that time, be held liable for damages under section 1983, those decisions do not govern the instant case where damages are sought from a county

government sued through the device of an official-capacity suit challenging official policies enforced by the named public officer.

6. For example, Kincaid alleged that Sheriff Rusk enforced policies that denied contact visitation, allowed jail employees to open the prisoners' mail, provided insufficient food, medical treatment and bedding material, and prohibited the prisoners' access to reading material other than *Readers Digest* and the *Bible*. Appellees have not denied the official status of these policies and procedures; indeed, some were formalized in a document listing various jail rules.

7. Appellee's argument that the instant case is moot because the governmental entity (Tippecanoe County) is not obligated to pay any judgment is without merit. As explained in *Monell*, the real defendant in an official-capacity suit is not the named public officer but rather the governmental entity. The government, and not the public officer, is solely responsible for satisfying a judgment rendered against an officer sued in his official capacity. *See Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981); *Bertot v. School District No. 1*, 613 F.2d 245, 247 n.1 (10th Cir. 1979); *Torres v. Toledo*, 586 F.2d 858, 859 (1st Cir. 1978); *Greminger v. Seaborne*, 584 F.2d 275, 279 (8th Cir. 1978); *cf. McNamara v. Moody*, 606 F.2d 621 (5th Cir. 1979), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980) (state must pay attorneys' fees awarded under 42 U.S.C. § 1988 (1976) in official-capacity suit).

## II. Denial of Access to Reading Material

### A. *Applicable Standards*

Kincaid asserts that his constitutional rights as a pretrial detainee were violated in a number of ways during his stay in the Tippecanoe County jail. After a lengthy trial, the district court entered judgment in favor of Sheriff Rusk with respect to all issues. We believe that the court's ruling was correct except as to certain first and fourteenth amendment claims, which we will address. We do not believe it is necessary to detail Rusk's alleged transgressions except those as to which we believe the district court erred in exculpating Rusk.

Sheriff Rusk testified that the only reading material to which Kincaid was permitted access consisted of soft-bound, non-pornographic books, non-pictorial magazines such as *Readers Digest,* and the *Bible.* Pictorial magazines, such as *Sports Illustrated, Playboy* and *Newsweek* were banned from the jail because, according to Rusk, inmates would damage the jail by "stick[ing the pictures] all over the walls." Transcript at 241–43. Newspapers were also banned ostensibly because "they were used [to jam the toilets] and also to start fires." Memorandum Opinion at 13 (reproduced in Kincaid Appendix at 138). Finally, inmates could not have any hardbound books because they were used to plug or jam toilets and because of their potential use as "lethal propellants." *Id.* The district court concluded that these prohibitions were reasonable security measures and did not constitute "gross negligence or wanton or malicious conduct as would trigger damages." *Id.*

The standard of constitutional review applicable to jail policies or practices affecting pretrial detainees is set out in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *Wolfish* involved a challenge by both convicted prisoners and pretrial detainees to various jail conditions, practices and policies, including allegations to improper mail censorship and denial of access of hardbound books received from any source other than a publisher or book club. Justice Rehnquist, writing for the majority, explained in detail the standard for analyzing such restrictions under the due process clause:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is *whether those conditions amount to punishment of the detainee.* For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

441 U.S. at 535, 99 S.Ct. at 1871 (footnotes omitted) (emphasis supplied).[8] The imposition of punishment alone, however, is insufficient to establish liability under this standard. Rather, Kincaid must also demonstrate that the challenged restrictions were used *intentionally* by jail officials to punish detainees. There may be express evidence of intent or intent may be inferred from restrictions that are not "reasonably related to a legitimate governmental objective." 441 U.S. at 538–39, 99 S.Ct. at 1879–80.

But the substantive due process standard enunciated in *Wolfish* is not the only standard of substantive due process applicable to this case under the fourteenth amendment. To this extent, the *Wolfish* Court also examined under the first amendment certain restrictions which regulated the use and possession of mail and certain books. In that respect, the Supreme Court noted that pretrial detainees and convicted prisoners are entitled to equivalent degrees of first amendment pro-

---

8. Appellees assert that *Wolfish,* considered with *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), demonstrates "that the official's acts must be unnecessary and deliberate or wanton or intentionally reckless or wrongful to constitute a constitutional depri-

vation actionable under 42 U.S.C. § 1983." Appellee's Brief and Appendix at 19–20. We reject that formulation and note that *Gamble,* which involved an eighth amendment claim by a convicted prisoner, is not directly relevant to

tection[9] and, thus, that the analysis of a prison condition or policy under the first amendment is the same for both categories of inmates. *See* 441 U.S. at 545, 546, 99 S.Ct. at 1877, 1878. This analysis by the *Wolfish* Court, 441 U.S. at 545–48, 99 S.Ct. at 1877–79, may be summarized as follows:

1. Prisoners and pretrial detainees retain certain constitutional rights, including first amendment freedoms. *See Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

2. These rights must be accommodated with the legitimate goals and objectives of institutional confinement.

3. "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of ... pretrial detainees." 441 U.S. at 546, 99 S.Ct. at 1877 (footnote omitted).

4. Deference should be accorded to the judgment of prison officials in executing policies designed to preserve order and discipline.

We have reviewed the policies enforced by Sheriff Rusk (which are attributable to Tippecanoe County) restricting the reading material accessible to pretrial detainees and conclude that these restrictions violated Kincaid's due process and first amendment rights. Although Sheriff Rusk did not expressly purport to punish Kincaid by barring his access to a great deal of reading material, an intent to pun-

ish in violation of due process may be inferred from the lack of a reasonable relation between the restrictions and any legitimate institutional policies. For example, pictorial magazines were wholly banned in order to prevent detainees from "sticking" pictures on the wall. Sheriff Rusk could have prevented this sort of damage to jail walls without blatant censorship by banning the possession of adhesive materials by detainees.[10] Moreover, the total ban on newspapers was arbitrary and unjustifiable when the two hazards allegedly caused by the possession of newspapers—fire damage and jammed plumbing—could as well be caused by the sort of reading material detainees were permitted to have.[11] We also find unreasonable the ban on all hardbound books when other paper and nonpaper material (*e.g.*, shoes) could just as easily jam toilets or cause injuries to guards when thrown by inmates.[12]

But we do not rely primarily on the fourteenth amendment and Sheriff Rusk's policies as constituting punishment for the basis of liability here. Even if we were not to find due process violations, we would conclude that Kincaid's first amendment rights were violated by Sheriff Rusk's enforcement of jail policies restricting access to reading materials. Maintenance of security and discipline do not justify the wholesale prohibition of pictorial magazines, hardbound books or newspapers. Although deference to the judgment of prison officials is required in most instances, *see*

the due process standard applicable to pretrial detainees as enunciated in *Wolfish*.

9. In contrast, the *Wolfish* Court expressly limited its substantive due process analysis to pretrial detainees.

10. We do not necessarily imply that the *Wolfish* substantive due process analysis mandates a "least restrictive alternative" approach to jail regulations. Nevertheless, such an approach is helpful where, as here, the alleged institutional objective is unrelated to security and the restriction is overbroad. Pretrial detainees are not convicted prisoners and thus, any overbroad restriction of their freedom may be suspect if not reasonably related to institutional security.

11. Indeed, we note that during Kincaid's confinement, the alleged fire hazard appears to have been alleviated by Sheriff Rusk's rule prohibiting the possession of matches and smoking materials in the jail.

12. A ban on hardbound books may be reasonable if the underlying institutional policy is to prevent smuggling contraband into or out of the jail. *Cf. Wolfish*, 441 U.S. at 548–52, 99 S.Ct. at 1878–81 (upholding "publisher only" rule banning all hardbound books except those received in mail directly from publisher). No such justification has been asserted in this case.

*Wolfish*, 441 U.S. at 547–48, 99 S.Ct. at 1878–89, we are not persuaded that deference is proper in the instant case because, *inter alia*, of the impact on first amendment rights of the policies enforced by Rusk. *See X (White) v. Gray*, 378 F.Supp. 1185, 1186 (E.D.Wis.1974), *aff'd mem.* 558 F.2d 1033 (7th Cir. 1977). The restrictions involved apparently do not significantly reduce the risk of fire or damage to jail facilities. On the other hand, pretrial detainees, regardless of the length of detention, suffer substantial deprivation of their first amendment rights when access to newspapers, books and magazines is arbitrarily circumscribed. The restrictions challenged in this case were also blatantly content-biased and cannot be justified as reasonable "time, place and manner" restrictions.[13] *Cf. Wolfish*, 441 U.S. at 551–52, 99 S.Ct. at 1880–81 ("publisher only" rule is both content-neutral and acceptable as reasonable "time, place and manner" restriction).

## B. *Good Faith Immunity*

 The district court concluded that Sheriff Rusk "is immune from liability . . . for his actions, if, in the light of the discretion and responsibilities of his office, and under all the circumstances as they appeared at the time, he acted reasonably and in good faith." Kincaid Appendix at 123. Subsequent to the district court's decision here, the Supreme Court held that a good faith immunity defense is not available to governmental entities in a section 1983 suit. *Owen v. City of Independence*, 445 U.S. 622,

100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Because an official-capacity suit, such as the instant case, merely represents another form of claim against the government entity itself, *Monell*, 436 U.S. at 690 n.55, 98 S.Ct. at 2035 n.55, the *Owen* holding denying the good faith immunity defense has been extended to official-capacity suits. *See Universal Amusement Co. v. Hofheinz*, 646 F.2d 996, 997 (5th Cir. 1981); *Key v. Rutherford*, 645 F.2d 880, 883 (10th Cir. 1981); *McGhee v. Draper*, 639 F.2d 639, 644 (10th Cir. 1981).[14] Thus, we reverse the district court's order insofar as it held that Rusk was immune from liability. We hold that Kincaid has established a violation of his due process and first amendment rights by Rusk's enforcement of an official policy restricting his access to reading material.[15]

## III. Damages

 Our earlier discussion of the good faith immunity defense applies also to the question of damages, the district court having erroneously concluded that Rusk was immune from liability. Kincaid Appendix at 123. Nevertheless, our inquiry does not stop here. Beyond the questions of immunity from liability for damages, we must also ascertain whether any substantial damages may properly be awarded to Kincaid. Because the purpose of section 1983 is to compensate for the injuries resulting from a deprivation of constitutional rights, Kincaid must demonstrate that the restrictions found unlawful here caused some com-

---

**13.** Rusk's ban on at least some reading material was justified in part by the desire to keep "pornography" out of the hands of prisoners and pretrial detainees. A mere dislike for pornography (or, more precisely, what the sheriff considered to be pornography) is not a legitimate institutional objective (related to security or like considerations) and thus, we consider pornography in this context a suspect basis for restrictions on reading material. *See Morgan v. La Vallee*, 526 F.2d 221, 224 (2d Cir. 1975). We do not foreclose entirely, however, the right of Rusk's successors to ban "pornography" (or certain types of "pornography") provided that an acceptable standard other than the sheriff's personal tastes is provided in connection with the restriction. *See, e.g., Trapnell v. Riggsby*, 622 F.2d 290 (7th Cir. 1980).

**14.** There is no doubt that we are required in this case to apply the Court's decision issued after the district court's consideration of this matter, especially since *Owen* did not overturn clear past precedent. *See Key v. Rutherford*, 645 F.2d 880, 883 & n.3 (10th Cir. 1981).

**15.** We do not reverse the district court's decision with respect to other alleged constitutional violations, notwithstanding the district court's application of an incorrect standard with respect to good faith immunity. Kincaid failed to demonstrate at the threshold, with respect to these claims, that any constitutional right was implicated or infringed.

pensable injury. *Carey v. Piphus*, 435 U.S. 247, 254–55, 98 S.Ct. 1042, 1047–48, 55 L.Ed.2d 252 (1978); *Wood v. Strickland*, 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975). Under the circumstances of this case, a compensable injury would be established if, for example, Kincaid demonstrated that the jail conditions were "less desirable" because of the restricted access to reading material, *see Buise v. Hudkins*, 584 F.2d 223, 233 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), or that he unsuccessfully attempted to gain access to forbidden reading materials. *See Masjid Muhammad-D.C.C. v. Keve*, 479 F.Supp. 1311, 1327 (D.Del.1979).[16]

In this respect, in addition to its ruling on the good faith immunity defense, the district court found that Kincaid failed to prove any damages from the alleged constitutional deprivations, including the unlawful restriction of access to reading material. We have reviewed the record and conclude that this finding is not clearly erroneous or an abuse of discretion. *See Cruz v. Beto*, 603 F.2d 1178, 1186 (5th Cir. 1979). Kincaid testified that his family provided him with paper-bound reading material as permitted by jail rules and that he played cards and talked with other inmates during the daytime. At no point did Kincaid assert that he suffered distress which could be directly attributable to the unlawful restrictions on reading materials or that he desired access to prohibited reading materials. Indeed, Kincaid's counsel on appeal, who also represented Kincaid at trial, conceded that no evidence of compensable damages was presented to the district court. Additional Brief of Plaintiff-Appellant at 12. The jail conditions and the deprivations, as established by Kincaid's testimony, do not rise to the level of such "deplorable" conditions as might otherwise justify an award of substantial compensatory damages. *See Furtado v. Bishop*, 604 F.2d 80, 98 (1st Cir. 1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).

 Nevertheless, Kincaid did establish that his rights were violated by Rusk's enforcement of restrictive policies governing access to reading material, and, thus, he is entitled to an award of nominal damages in the sum of one dollar. *See Masjid Muhammad-D.C.C. v. Keve*, 479 F.Supp. 1311, 1327–28 (D.Del.1979); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir. 1980). *See also Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

The district court's judgment is affirmed in part and reversed in part in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART.

---

16. Other examples of compensable injuries in this context include emotional distress, *see Carey v. Piphus*, 435 U.S. at 263–64, 98 S.Ct. at 1052–53; *Brule v. Southworth*, 611 F.2d 406, 411 (1st Cir. 1979), humiliation and personal indignity, *see Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir. 1979); *Cruz v. Beto*, 603 F.2d 1178, 1186 (5th Cir. 1979), and physical injury, *see Wood v. Worachek*, 618 F.2d 1225, 1233 (7th Cir. 1980).