21 F.3d 431
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Michael D. SIZEMORE, Plaintiff-Appellant,
v.
Harold G. MILLER, et al., Defendants-Appellees.
 No. 92-2098.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 5, 1994.*
Decided April 7, 1994.
 
 Before CUMMINGS, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Michael Sizemore, an inmate at the United States Penitentiary in Marion, Illinois, filed suit, alleging that in November 1983, several correctional officers beat him with batons and dragged him from his cell to the segregation unit in violation of his Eighth Amendment rights. Five of the officers, Lawrence Smith, Manuel Cedillos, Joseph Oglesby, Dana Craven and Opher Cephas had been transferred temporarily to Marion from other federal correctional institutions in response to the volatile conditions at Marion resulting in a "permanent lockdown" in 1983. See Bruscino v. Carlson, 854 F.2d 162 (7th Cir.1988), cert. denied, 491 U.S. 907 (1989). In 1992, the district court dismissed Sizemore's claim against Harold Miller, the former warden of Marion, and a jury found the remaining defendants not liable. On appeal, Sizemore alleges numerous trial and pretrial violations.[1] None of them have merit, and we affirm.
 
 Motion to Dismiss
 
 2
 Sizemore sued Harold Miller, the warden at Marion when this claim arose, in both his individual and official capacities. He requested monetary and declaratory relief. When the district court ruled on Miller's motion to dismiss, Sizemore had been transferred to the Federal Correctional Institution in Leavenworth, Kansas and was no longer subject to the alleged unconstitutional policies adopted by Miller. Thus, Sizemore's claim for declaratory relief would have been moot unless it had been likely that Sizemore would be retransferred to Marion. Knox v. McGinnis, 998 F.2d 1405, 1415 (7th Cir.1993) (inmate failed to establish real and immediate threat of being subjected to black box now that he had been released from segregation, and had no standing in Sec. 1983 action); Young v. Lane, 922 F.2d 370, 373 (7th Cir.1991) (although plaintiffs had been transferred out of the correctional facility where the constitutional violation occurred, the district court's grant of injunctive relief would be upheld if the plaintiffs were likely to be retransferred to that institution). The issue was not discussed below. Although it appears from Sizemore's appellate brief that since the trial he has been retransferred to Marion, we need not decide whether the district court's dismissal of the claim for declaratory relief was an abuse of discretion because the claim against Miller is moot on other grounds.
 
 
 3
 The record indicates that Miller is no longer the warden of Marion. Because the policy against which Sizemore is seeking declaratory relief was allegedly developed by Miller alone, Sizemore's failure to allege that the current warden continues to approve of unnecessary and excessive beatings is fatal to Sizemore's claim. Kincaid v. Rusk, 670 F.2d 737, 742 (7th Cir.1980); see also Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 690 (1949) (sovereign immunity inapplicable where "conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign").
 
 
 4
 With respect to Sizemore's request for monetary damages, such relief may only be sought against a federal official in his individual capacity. Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971); Robinson v. Turner, No. 92-3936, 1994 WL 17212, at * 2 (7th Cir. Jan. 24, 1994). The district court correctly dismissed the claim against Miller in his individual capacity because Sizemore failed to allege any facts supporting Miller's direct responsibility for the beating. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir.1993). Speculation that Miller "had to have been aware," that "he simply did not care," or that he "had to have been involved with the decision making process" to bring many of the defendants to Marion does not suggest that Miller was personally involved in the alleged beating and is not enough to sustain a claim. Cf. Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983) (liability based upon theory of respondeat superior not actionable under Sec. 1983). Nor is it enough simply to invoke conclusory language such as that Miller "knowingly, wilfully, or at least recklessly" caused the physical assault. Miller's motion to dismiss was properly granted.
 
 Request for Counsel
 
 5
 The district court granted Sizemore's request for counsel in June 1984. The following September at Sizemore's behest, appointed counsel withdrew from the case because of his "irreconcilable differences [with Sizemore] ... with respect to the prosecution of the case." The court denied Sizemore's subsequent request for counsel, noting that he failed to show good cause why a second attorney should be appointed and that allowing plaintiffs "the right to veto the court's choice of counsel would set a dangerous precedent."
 
 
 6
 There is no federal constitutional right to counsel in a federal civil case. Jackson v. County of McLean, 953 F.2d 1070, 1071 (7th Cir.1992). As a result, we will not overturn a district court's denial of counsel unless it is clear beyond a doubt that the litigant was incapable of trying the case himself and that he was unable to retain counsel on his own. Farmer v. Haas, 990 F.2d 319, 323 (7th Cir.) (simplifying multifactorial approach of Maclin v. Freake, 650 F.2d 885 (7th Cir.1981) (per curiam)), cert. denied, 114 S.Ct. 438 (1993). Yet, the factors outlined in Farmer and Maclin are not exclusive. Jackson, 953 F.2d at 1072. Here, the district court acknowledged its authority to request new counsel and stated that it would do so where the original counsel was granted leave to withdraw for reasons beyond the prisoner's control. In this case, however, Sizemore did not adequately justify his inability to work with his counsel. Although he submits on appeal that the attorney informed him that Sizemore could not expect vigorous representation unless he paid for it, Sizemore did not relay this information to the district court.[2] Accordingly, we find that the district court did not abuse its discretion.
 
 
 7
 Discovery Issues/Subpoena of Witnesses/Trial Preparation
 
 
 8
 Pretrial discovery matters are reviewed for a clear abuse of discretion. Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir.1993), cert. denied, 114 S.Ct. 1054 (1994); see also McNeil v. Lowney, 831 F.2d 1368 (7th Cir.1987) (standard of review for the denial of requests for the issuance of subpoenas is abuse of discretion), cert. denied, 485 U.S. 965 (1988). Sizemore's contention that he was unable to depose any of the defendants' witnesses is without merit. The magistrate judge assigned to rule on pretrial matters denied his motion of April 16, 1985 to interview potential witnesses because he had failed to serve any of the named defendants. Sizemore was told specifically that he could file another motion once he effectuated service.[3] During the pre-trial conference on November 24, 1986, Sizemore renewed his request for access to witnesses. The magistrate judge ordered that Sizemore should present the defendants' counsel with the questions and names of the individuals he would like to interview. The questions would be given to the individuals and would be returned to the court upon their completion. Sizemore never mentioned to the magistrate judge or the district court that the defendants failed to respond to his requests for statements. Furthermore, although the record does not indicate whether the court-ordered discovery conference between Sizemore and the defendants' counsel was held, defendants responded to Sizemore's requests for interrogatories. Accordingly, we see no error in the court's denial of Sizemore's motion for sanctions because of the defendants' failure to comply with discovery requests or in the denial of Sizemore's request for interviews.
 
 
 9
 Next, Sizemore claims that the district court was not impartial when it ruled on the parties' discovery requests. Specifically, he points to the magistrate judge's denial of his motion in July 1990 for a summary of the testimony to be given by the defense witnesses. The magistrate judge ruled that the discovery deadline had elapsed. Subsequent orders in March and July 1991 by the district court judge directed Sizemore to provide the defendants with a summary of the testimony of his witnesses and permitted defendants to depose Sizemore's witnesses.
 
 
 10
 Although we find no record of a discovery deadline, the July 1990 Order was decided by a magistrate judge and could have been appealed within 10 days of the determination to the district court judge. 28 U.S.C. Sec. 636(b)(1)(A); S.D.Ill.Rule 28(a). Sizemore did not appeal. In addition, the magistrate judge explained that pursuant to the pretrial order form, the plaintiff must summarize the anticipated testimony of incarcerated witnesses so that the court may determine whether the testimony is essential or merely cumulative. No such requirement is enforced upon the defendants on the pretrial order form. Sizemore challenges only the partiality of the magistrate judge and the district court judge and does not dispute the constitutionality of the summarization requirement. Because the district court was simply following its own court procedures, we find no bias in the discovery rulings.
 
 
 11
 Furthermore, the defendants did not know until April 1991 how many of Sizemore's proposed witnesses would actually testify at trial. In the Pretrial Order issued of July 31, 1990, Sizemore listed nine witnesses that he expected to call. Still outstanding at that time were Sizemore's requests for subpoenas for these witnesses. In February 1991, the defendants moved the district court judge to exclude or, in the alternative, to limit the number of witnesses that Sizemore could call. The district court then ordered Sizemore to provide the defendants with a summary of the testimony to be given by his witnesses. Sizemore complied and did not raise the issue of partiality. In April 1991, the court granted in part and denied in part the defendants' motion to exclude Sizemore's witnesses and granted Sizemore's request to issue two subpoenas and two writs of habeas corpus ad testificandum for the incarcerated witnesses. For efficiency and conservation of resources, it is understandable why the defendants would wait to take the depositions until they were sure which witnesses would testify. Thus, the district court's grant of the motion was not an abuse of discretion.
 
 
 12
 The subpoena request for Randy Davis was denied because Sizemore failed to provide sufficient justification for the subpoena. Sizemore's claim that the court already possessed "precise transcribed testimony" of his proposed witnesses lacks any supporting evidence. The district court also concluded that a subpoena for Shirley Sizemore, apparently a relative of the plaintiff, would be unnecessary without a further showing that she would not testify voluntarily. The district court denied the other subpoena requests because the testimony offered by these witnesses would be cumulative. United States v. Garza, 664 F.2d 135, 141 (7th Cir.1981) (denial of subpoenas for incarcerated witnesses was not an abuse of discretion in a criminal proceeding where the testimony would have done little to buttress the defendants' position), cert. denied, 455 U.S. 993 (1982); cf. Fed.R.Civ.P. 26(b)(1) (the district court shall limit discovery if the evidence sought is unreasonably cumulative or is unduly burdensome). Sizemore does not dispute these findings on appeal, and without evidence to the contrary, we refuse to upset the district court's ruling to limit the number of subpoenas issued.
 
 
 13
 Sizemore also objects to the district court's rejection of John S. Bridges as a witness. The claim has no factual support. The court did not reject Bridges. Both Sizemore and the defendants deposed Bridges who swore that he had no personal knowledge of the alleged beating.[4] The record indicates that the district court told Sizemore that he would not allow hearsay testimony by Bridges upon which Sizemore indicated that he no longer wanted to call Bridges as a witness.
 
 
 14
 After Sizemore claimed at trial that his witness, David Hale, a former correctional officer at Marion, had been threatened by the defendants, the district court questioned the witness in chambers. Hale denied that he had received any threats in connection with this case or that the testimony he would give had been coerced. Thus, he proceeded to testify. We find no error in the court's actions. Although Sizemore also claims that Hale's testimony was inconsistent with his statements before the court in the Bruscino case, his failure to cross-examine Hale on this matter was his own error that cannot be rectified by this court.
 
 
 15
 Finally, Sizemore claims that the district court gave him only one day to prepare for trial because his legal materials were taken from him two weeks earlier while he was transported from the prison to the trial court. In fact, the trial judge personally called the Associate Warden at the Federal Correctional Institution in Leavenworth, Kansas to discover the whereabouts of Sizemore's legal documents. Because he was informed that they would arrive the next day, the judge postponed the trial to give Sizemore the opportunity to review his papers. Given that this case was filed in 1984 and first set for trial in May 1991, we believe that one day was ample time for Sizemore to review his trial documents, including those given to Sizemore by the defendants two days before trial.
 
 Evidentiary Rulings
 
 16
 Sizemore also objects to various evidentiary rulings made by the district court. We conclude that the district court's rulings were reasonable and were within the realm of its discretion. McGeshick v. Choncair, 9 F.3d 1229, 1236 (7th Cir.1993).
 
 
 17
 First, Sizemore claims that questioning him about his membership in the Aryan Brotherhood[5] was highly prejudicial and irrelevant. The district court overruled Sizemore's objection without explanation, and Sizemore replied that he was not a member of the organization. No one ever explained to the jury what the Aryan Brotherhood was, and no mention was made of the association throughout the remainder of the trial, thus greatly reducing any prejudicial effect the question may have had upon the jury. See Fed.R.Evid. 403. Furthermore, Sizemore's alleged association with a gang known for its violence may have been relevant to explain why several officers were used to transport Sizemore from one unit to another even though, according to the defendants, Sizemore did not resist and this transfer was similar to others that the defendants participated in following the lockdown. Cf. United States v. McKinney, 954 F.2d 471, 473 (7th Cir.) (evidence of Aryan Brotherhood's racketeering activities and control over its members helped to establish motive for inmate killing), cert. denied, 113 S.Ct. 662 (1992). Under the circumstances, we find the district court's ruling reasonable and will not overturn it.
 
 
 18
 Second, contrary to Sizemore's statement in his brief, the district court sustained his objection to the defendants' reference to an attempted escape and instructed the jury to disregard the question. Without additional evidence, we presume that the jury followed the district court's instructions and that it did not make any improper inferences from the defendants' question. United States v. Schweihs, 971 F.2d 1302, 1321 (7th Cir.1992).
 
 
 19
 Finally, Sizemore objects to the defendants' use of Marion's "notorious reputation" to impute that he was a dangerous individual, and that he played some role in the violent events that led up to the lockdown. Sizemore would be correct if the defendants had attempted to show that Sizemore's actions during the transfer to a different unit conformed with the reputation of Marion inmates as violent individuals. Fed.R.Evid. 404(a). However, the defendants did not. The defendants established during trial that Marion was the only Level 6 security prison in the country and that it housed the most violent criminals in the federal system. Under the strictures of the district court's ruling on Sizemore's motion in limine, the defendants also entered into evidence that several of the guards had been temporarily transferred to Marion from other correctional institutions "because of certain conditions then prevailing at Marion." The district court allowed the evidence because the defendants were entitled to explain to the jury why they were working at Marion when they were employees of other institutions. After reviewing the record, we conclude that the description of Marion was used solely to establish why each of the defendants was at Marion, and therefore we further conclude that the district court did not abuse its discretion in admitting this information.
 
 Directed Verdict
 
 20
 The district court granted the defendants' motion for a directed verdict with respect to Guy Barker because of insufficient evidence demonstrating Barker's involvement in the alleged beating. The only evidence presented at trial that placed Barker at the scene of the alleged beating was a statement by Andrew Ingram, the plaintiff's witness, that Barker might have been present when Sizemore was moved to the segregation unit. In addition, Sizemore testified that he had seen Barker in the visiting room the day before, and that Barker told him "we'll be up to see you tomorrow, punk." Reviewing the evidence de novo in the light most favorable to Sizemore, the nonmoving party, Continental Bank, N.A. v. Modansky, 997 F.2d 309, 312 (7th Cir.1993), we agree with the district court's decision.
 
 Jury Instructions/Punitive Damages
 
 21
 Sizemore's only objection to the jury instructions is that he was given twenty minutes to review them. Because he did not raise this objection before the district court, it is waived. Gora v. Costa, 971 F.2d 1325, 1329 (7th Cir.1992). Neither do we reach the issue of punitive damages because we affirm both the district court's grant of the motion to dismiss and the judgment in favor of the defendants.
 
 
 22
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 In his appellate brief, Sizemore stated that he would not cite any legal authorities nor assert any error, but would merely ask the court to review certain issues. We do not condone this practice and have often stated that we will not construct a party's legal arguments even if the appeal is filed pro se. Small v. Endicott, 998 F.2d 411, 417 (7th Cir.1993); Brooks v. Allison Div. of Gen. Motors Corp., 874 F.2d 489, 490 (7th Cir.1989) (pro se appellant's brief that cited neither legal authority nor specified any error was frivolous per se). Despite his prefatory statement, however, Sizemore proceeds to identify several alleged errors by the district court
 
 
 [2]
 Moreover, a few months after the district court denied Sizemore's request for a second lawyer, it consolidated his case with a class action suit and requested that counsel for that action represent Sizemore. Bruscino v. Carlson, 654 F.Supp. 609 (S.D.Ill.1987), aff'd, 854 F.2d 162 (7th Cir.1988), cert. denied, 491 U.S. 907 (1989). Although the record does not specify why, Sizemore then moved the court to sever his suit from the class action and to remove counsel from his case. The motion was granted
 
 
 [3]
 Sizemore's allegation that he could not serve several of the defendants because he could not obtain their addresses is moot since all the defendants have since been served
 
 
 [4]
 Sizemore also contends that the Assistant U.S. Attorney manipulated Bridge's statement. The allegation is not supported by the record. During Sizemore's deposition of Bridges, Bridges stated, "To the best of my knowledge [the affidavit I signed] is true, yes, but they were trying to prod me to say what they wanted me to say."
 
 
 [5]
 The Aryan Brotherhood is a prison gang which was organized originally in the California state prison system to protect white prisoners from other gangs but which has subsequently expanded its activities to include drug dealing and extortion. United States v. McKinney, 954 F.2d 471, 473 (7th Cir.), cert. denied, 113 S.Ct. 662 (1992)